IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 01-60461

United States District Court
Southern District of Texas
FILED

DEC 1 9 2001

Michael N. Milby
Clerk of Court

ENRIQUE GALAN

        Petitioner

v.

JOHN ASHCROFT, U S Attorney General

        Respondent

U. S. COURT OF APPEALS
FILED

DEC 1 2 2001

CHARLES R. FULBRUGE III
CLERK

B -01- 209

--------------------
Petition for Review of an Order of the
Board of Immigration Appeals
--------------------

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

BY THE COURT:

    IT IS ORDERED that the motion of petitioner to transfer case to the United States District Court for the Southern District of Texas, Brownsville Division, is *granted*.

    IT IS FURTHER ORDERED that the motion of petitioner to require respondent to file, as the certified administrative record, the temporary INS A-file which was in the hands of the decision-maker at the time the decision was made to reinstate the prior deportation order is *granted*.

    IT IS FURTHER ORDERED that the motion of petitioner to suspend the briefing notice until these issues have been resolved is *granted*.

A True Copy
Test
Clerk U. S. Court of Appeals, Fifth Circuit
By Claudia Farrington
Deputy 12/12/01
New Orleans, Louisiana

Case 1:01-cv-00209   Document 1   Filed in TXSD on 12/19/2001   Page 2 of 104

# *United States Court of Appeals*

FIFTH CIRCUIT
OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

United States District Court
Southern District of ...
RECEIVED

DEC 1 9 2001

Michael N. Milby, Clerk

TEL. 504-589-6514
600 CAMP STREET
NEW ORLEANS, LA 70130

December 12, 2001

Mr Michael N Milby, Clerk
Southern District of Texas, Brownsville
United States District Court
Room 1158
600 E Harrison Street
Brownsville, TX   78520-7114

    No. 01-60461 Galan v. Ashcroft
      Agency No. A30 379 730

Pursuant to the enclosed certified order this case was transferred
to the United States District Court for the Southern District of
Texas, Brownsville, Division.

We have also included the original filings in this court in the
attachment enclosed, and a copy of our docket sheet.

Please acknowledge receipt of this case by returning the enclosed
copy of this letter to our office in the envelope provided.

        Sincerely,

        CHARLES R. FULBRUGE III, Clerk

        By: *Claudia Farrington*
           Claudia Farrington, Deputy Clerk

Enclosure
cc w/encl:  Mr Thomas Ward Hussey
          Mr John Ashcroft
          Ms Lisa S Brodyaga
          Ms Heather REnee Phillips
          Ms Anne M Estrada
          Ms Christine G Davis

P.S. The docketing fee has been paid.

# General Docket
## Fifth Circuit Court of Appeals

Court of Appeals Docket #: 01-60461                     Filed: 6/12/01
Nsuit:    0
Galan v. Ashcroft

Appeal from: Board of Immigration Appeals

Lower court information:

    District: 0539-1 : A30 379 730
    Date Filed: **/**/**
    Date order/judgment: 5/17/01
    Date NOA filed: **/**/**

Fee status: Paid

Prior cases:
    None
Current cases:
    None

1-60461 Galan v. Ashcroft

ENRIQUE GALAN
     Petitioner

Lisa S Brodyaga
FAX 956-421-3423
956-421-3226
[COR LD NTC ret]
Refugio de Rio Grande
17891 Landrum Park Road
San Benito, TX 78586

v.

JOHN ASHCROFT, ATTORNEY
GENERAL
     Respondent

John Ashcroft
[NTC fio]
Office of the United States
Attorney General
Civil Division, Appellate Staff
10th and Pennsylvania Avenue NW
Room 3617 MAIN
Washington, DC 20530-0001

Thomas Ward Hussey, Director
FAX 202-616-4948
202-616-4852
[NTC fio]
US Department of Justice
Civil Division Immigration
Litigation
1331 Pennsylvania Avenue NW
Washington, DC 20004

Heather Renee Phillips
FAX 202-616-4975
202-616-9343
Suite 8041N
[NTC gvt]
US Department of Justice
1331 Pennsylvania Avenue NW
Washington, DC 20004

Christine G Davis
504-589-6524
Room T8011
[NTC fio]
US Immigration & Naturalization
Service
District Directors Office
701 Loyola Avenue
Attn:  Joe A Aguilar
New Orleans, LA 70113

Anne M Estrada
214-905-5899
[NTC fio]
US Immigration & Naturalization

1-60461 Galan v. Ashcroft

Service
8101 N Stemons Freeway
Dallas, TX 75247

**01-60461 Galan v. Ashcroft**

ENRIQUE GALAN

                    Petitioner


    v.

JOHN ASHCROFT, ATTORNEY GENERAL

                    Respondent

## 1-60461 Galan v. Ashcroft

| | |
|---|---|
| 6/12/01 | Agency case docketed. Petition for review filed by Petitioner Enrique Galan. [01-60461] ROA due on 7/23/01. (kkf) |
| 6/21/01 | Appearance form filed by Lisa S Brodyaga for Petitioner Enrique Galan.  [01-60461] (jtr) |
| 7/24/01 | Motion filed by Respondent John Ashcroft to extend time to file certified administrative record for 30 days until 8/22/01 [3289882-1] Excess Pages? (Y/N) n [01-60461] (agl) |
| 7/24/01 | CLERK Order filed granting respondent's motion extend time to file the certified administrative record until 8/22/01 [3289882-1] ROA ddl updated to 8/22/01. Copies to all counsel. [01-60461] (kgl) |
| 8/22/01 | Motion filed by Respondent John Ashcroft to extend time to file administrative record until 9/21/01 [3351801-1] Excess Pages? (Y/N) N. [01-60461] (lba) |
| 9/4/01 | COURT Order filed granting motion extend time to file Record on Appeal [3351801-1] ROA ddl updated to 9/21/01. (RMP) Copies to all counsel. [01-60461] (cnf) |
| 9/20/01 | Third Motion filed by Respondent John Ashcroft to extend time to file certified administrative record for 31 days until 10/22/01 [3378741-1] Excess Pages? (Y/N) n [01-60461] (agl) |
| 9/28/01 | Response/opposition filed by Petitioner Enrique Galan to third motion to extend time to file certified administrative record [3378741-1] by Respondent John Ashcroft  Excess Pages? (Y/N) n [3385933-1] [01-60461] (agl) |
| 10/5/01 | COURT Order filed granting respondent's third motion to extend time to file the certified administrative record to and including October 22, 2001 [3378741-1]. ROA ddl updated to 10/22/01. (RMP) Copies to all counsel. [01-60461] (agl) |
| 10/5/01 | Record on appeal filed.  Vol(s) of Pleadings: Original & 3 copies. [01-60461] ROA ddl satisfied. (sdh) |
| 10/8/01 | Briefing notice issued with special issues to be briefed. [01-60461]  A/Pet's Brief due on 11/19/01 for Enrique Galan. (sdh) |
| 10/15/01 | Extension granted by phone until: 12/4/01 to file brief for Petitioner Enrique Galan. [01-60461] (cmb) |

**01-60461 Galan v. Ashcroft**

| | |
|---|---|
| 10/19/01 | Motion filed by Petitioner Enrique Galan to transfer case to United States District Court for the Southern District of Texas, Brownsville Division [3405147-1], to require respondent to file, as the certified administrative record, the temporary INS A-file which was actually in the hands of the decision-maker at the time the decision was made to reinstate the prior deportation order [3405147-2], [3405147-3] to suspend briefing schedule until these issues have been resolved.  Response/Opposition due on 10/29/01.  Excess Pages? (Y/N) n [01-60461] (agl) |
| 10/19/01 | Certificate of Consultation and Notice of Non-Opposition to motion to suspend briefing notice [3405147-3] by Petitioner Enrique Galan filed by Petitioner Enrique Galan [3405179-1] [01-60461] (agl) |
| 11/2/01 | Response of non-opposition filed by Respondent John Ashcroft to motion to transfer appeal [3405147-1] by Petitioner Enrique Galan, motion to supplement the record [3405147-2] by Petitioner Enrique Galan, motion to suspend briefing notice [3405147-3] by Petitioner Enrique Galan.  Response/Opposition ddl satisfied.    Sufficient [Y/N]: y. [3418464-1] [01-60461] (agl) |
| 11/5/01 | Supplemental authorities (FRAP 28(j)) filed by Petitioner Enrique Galan [3419809-1] in support of motion to transfer petition. [01-60461] (agl) |
| 12/12/01 | COURT Order filed granting motion to suspend briefing notice [3405147-3]  A/Pet's Brief ddl canceled., granting motion to supplement the record [3405147-2], granting motion to transfer appeal [3405147-1] Judge Initials: HRD RMP JLD Copies to all counsel. [01-60461] (cnf) |

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
AT NEW ORLEANS, LOUISIANA

ENRIQUE GALAN,                    )
                                  )
v.                                )
                                  )
JOHN ASHCROFT, UNITED STATES      )
     ATTORNEY GENERAL.            )
_____ )



PETITION FOR REVIEW         01-60461

Enrique Galan petitions this Honorable Court for review of the
Order of Ponciano Guerra, Jr., dated May 18, 2001, and executed May
21, 2001, reinstating a deportation order dated January 16, 1990.
The Order was issued at Big Spring, Texas, under the Dallas, Texas,
INS District, and within this Court's jurisdiction.  Said Order has
not been reviewed by any other Court.  A copy of the Order is
attached hereto.  Also attached hereto is correspondence relating
to counsel's efforts to obtain a hearing with respect to Mr.
Galan's claim to United States citizenship, and copies of the N-600
application and supporting documentation filed in November, 2000.

Respectfully Submitted,

*Lisa S. Brodyaga*

Lisa S. Brodyaga, Attorney at Law
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

U.S. COURT OF APPEALS
**FILED**

JUN 1 2 2001

**CHARLES R. FULBRUGE III**
CLERK

CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing, with attachments,
were mailed, first-class postage prepaid, to John Ashcroft, U.S.
Attorney General, 950 Pennsylvania Ave. N.W., Room 5111,
Washington, D.C. 20530-0001, and the INS District Director, 8101
Stemmons Freeway, Dallas TX 75247, on June 4, 2001.

spring        915 267 7634                    P.02

**U. S. Department of Justice**
Immigration and Naturalization Service                    Notice of Intent/Decision to Reinstate Prior Order

File No: A30 379 730

Date:  5/17/2001

Name.  GALAN, Enrique

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 241.8, you are hereby notified that the Attorney General intends to reinstate the order of Deportation entered against you. This is based on the following determinations:

1.   You are an alien subject to a prior order of Deportation entered on **January 16, 1990** at   **Harlingen, Texas**

2.   You have been identified as an alien who:

   [ X ]   was removed on   **April 10, 1990**   pursuant to an order of deportation / exclusion / removal.

   [ ]   departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal after the date on which such order took effect.

3.   You illegally reentered the United States on or about **April, 1990** at or near **Brownsville, Texas**.

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* _____ *language*

Maria E. Pulido                           Maria E. Pulido
(Printed or typed name of official)                    (Signature of officer)

                                        Immigration Agent
_____
                                        (Title of officer)

---

### Acknowledgment and Response

I [ ] do [✓] do not wish to make a statement contesting this determination.

05/18/01                           (Unable Refused to Sign)
(Date)                                   (Signature of Alien)

---

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order in accordance with section 241(a)(5) of the Act.

5/18/01                                        .
(Date)                                   (Signature of authorized INS official)

Ponciano Guerra, Jr.                        IRP Director
(Printed name of official)                       (Title)

Form I-871 (Rev. 05/07/97)

BUREAU OF PRISONS

**Notice of Release and Arrival**

SECTION I - To be completed by Institutional Officials

Name:  **Galan, Enrique**　　　　Reg. Number:  **83443-020**　　　FBI Number  **N/A**

Type of Release  **Good Conduct Time**　　　Was there a previous release on this sentence?  **No**
　　　　　　　　　(Parole or M/R)

Mailing address of proposed residence　　**N/A**

The above mentioned person was released from　　**Big Spring Correctional Center - Cedar Hill Unit**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Name of Institution)

At  **10:30 am**  o'clock, on　**05-21-01**　Transportation was arranged to

　　　　　　　　　　　　　　　　　**via**  **US Immigration and Naturalization Service**
　　　　　　　　(City and state)　　　　　　　　　　　(Name of bus, train , airplane, or by auto)

Name of detaining authority, if any　　**US-INS, Big Spring, Texas**
　　　　　　　　　　　　　　　　　　　　　　　(Agency and Location)

If not released to detainer, estimated date of arrival at residence　　　　　**N/A**

Gratuity  $  **-0-**　　　Other money in personal account:  $  **84.50**　Total:  $  **84.50**

Amount to releasee:  $  **84.50**　　　Amount mailed:  $  **N/A**

Address to which mailed:  **N/A**

Balance of amount owed on all financial obligations:　$　**-0-**

Type of obligation outstanding (e.g. fine, restitution, etc. )　**Felony Assessment Fee**

Chief U.S. Probation Officer of district residence:　**Jerry Denzlinger, Chief  USPO**
　　　　　　　　　　　　　　　　　　　　　**P.O. Box 61207**
　　　　　　　　　　　　　　　　　　　　　**Houston, Texas 77208-1207**　*72 Hours*

District:  **S:Texas**　　　Address:

Section II - To be completed by releasee and taken or mailed to Probation Officer within three days after arrival in district of residence

I have arrived at
　　　　　　　　　　　　　　　　(City and State)

Date released from detainer (if any)　　　　　My home address will be

_____
(Signature of Probation Officer to whom assigned)　　　　　(Date of releasee's arrival)

Instructions

INSTITUTION:  In parole or mandatory release cases, prepare 5 copies. Give original to releasee; mail a copy to the United States Probation Officer, a copy to the United States Attorney's Office (sentencing district), Attn: Financial Litigation Unit; a copy to the Parole Commission; and retain a copy for your file.

In expiration cases, prepare 3 copies: Mail original to United States Probation Officer for information only; a copy to the United States Attorney's Office (sentencing district), Attn. Financial Litigation Unit.

# LAW OFFICES OF LISA S. BRODYAGA
**17891 Landrum Park Rd.**
**San Benito, Texas 78586**
**(956) 421-3226**
**FAX: 421-3423**
May 27, 2001

J.T. Lawson
INS Big Spring, TX
By FAX:  (915) 267-7634

Jim Reynolds, District Counsel
INS Dallas, TX
By FAX: (214) 905-5593

E. M. Trominski, INS District Director
2102 Teege
Harlingen, Texas 78550

Re:  Enrique Galan, A30 379 730

Dear Mr. Lawson, Mr. Reynolds, and Mr. Trominski:

As you may recall, on May 17th, I sent Mr. Lawson, and Mr. Reynolds, by fax, copies of my G-28 in the case at bar, (filed November 2, 2000), and of the filing receipt for Mr. Galan's N-600, also filed on November 2, 2000 in Harlingen.  I also advised both gentlemen that Mr. Galan wished to pursue his claim to U.S. citizenship in removal proceedings.  Shortly after sending the documents to Mr. Lawson, I received a call from him, advising me that Mr. Galan had been transferred to Dallas.  I then called Mr. Reynolds, explained the situation, and faxed the same documents to him.  Copies of this correspondence are enclosed.  Since that time, I have received no communication from anyone associated with INS about this case.

Subsequently, however, I learned from Mr. Galan's family that on or about May 20th, Mr. Galan was returned to Big Spring from Dallas.  On May 21st, at the Big Spring facility, he was presented with some papers to sign.  He declined, explaining that he had an attorney, and did not wish to sign any papers without being allowed to first consult with his attorney.  The official presenting the papers then took them back, said something to the effect that this was his right, and wished him well.

He was then sent by bus to El Paso where he was returned to Mexico.  He arrived late in the evening of May 21, 2001.  The only document he was given was a "Notice of Release and Arrival," stating that he had been released from Big Spring to INS. (copy enclosed).  Attached were three flyers:  one relating to tuberculosis, one entitled "Bienvenido a Mexico - Tu Casa," and one warning him that

it would be a felony to possess any firearm or ammunition.  He was not given any documents purporting to show the authority under which he was so summarily returned to Mexico.

Upon learning that he had been physically removed to Mexico, I called Mr. Reynolds, and left two messages.  So far, I have not received any response.  As I am sure you are aware, it is improper to remove anyone to Mexico without giving the person copies of the documents which allegedly provide the authority for such an action, and, without serving copies on the individual's attorney of record. It is also improper to remove a United States citizen to Mexico, or a claimant to U.S. citizenship, without providing that person an opportunity to pursue his claim before an Immigration Judge.

So far as I can tell, there are two possible procedures which might have been invoked to remove Mr. Galan. One would be under §238 ("expedited removal of aliens convicted of committing aggravated felonies"), and the other, under §241(a)(5) ("reinstatement"). Both provisions involve certain procedures, have specified time tables, and require service of documents on the purported alien, which of necessity, requires service also on counsel of record. *See*, 8 C.F.R. §§238.1; 241.8, and 292.5.   Obviously, these procedures were not followed herein.

Mr. Galan is presently staying (on the Mexican side) near Los Indios, Texas, which is under the Harlingen District.  It would therefore be appreciated if you, Mr. Trominski, would parole Mr. Galan into the United States, for the purpose of conducting a hearing at which he may pursue his claim to U.S. citizenship.  It would also be appreciated if Mr. Lawson and/or Mr. Reynolds would send me copies of any and all documentation relating to his removal from the United States, so that, if necessary, I can file a timely challenge this removal in the appropriate judicial forum.

Thank you for your prompt consideration.

Sincerely,

Lisa S. Brodyaga,
Attorney at Law

Encl/  As stated.

2

# LAW OFFICES OF LISA S. BRODYAGA
## 17891 Landrum Park Rd.
## San Benito, Texas 78586
## (956) 421-3226
## FAX: 421-3423
May 17, 2001

INS
Big Spring, TX
By FAX:  915-267-7634
Attn:  J.T. Lawson

Dear Mr. Lawson:

Enclosed please find a copy of my G-28 on behalf of Enrique Galan-Gonzalez.  It was filed in Harlingen, Texas, on November 2, 2000, in conjunction with an N-600 application for certificate of citizenship.  As I explained on the telephone, that application was "rejected" by INS as not containing sufficient new information to justify reopening proceedings.  However, we intend to renew Mr. Galan's claim to U.S. citizenship before the Immigration Judge.

Thank you for your prompt consideration.

Sincerely,

Lisa S. Brodyaga, Attorney at Law

Encl/  As stated.

5/17  Lawson called.  C has been moved to Dallas.

# LAW OFFICES OF LISA S. BRODYAGA
## 17891 Landrum Park Rd.
## San Benito, Texas 78586
## (956) 421-3226
## FAX: 421-3423
May 17, 2001

Jim Reynolds, District Counsel
INS
Dallas, TX
By FAX: (214) 905-5593

Dear Mr. Reynolds:

Enclosed please find a copy of my G-28 on behalf of Enrique Galan-Gonzalez. It was filed in Harlingen, Texas, on November 2, 2000, in conjunction with an N-600 application for certificate of citizenship. Although INS concluded that it did not contain sufficient new information to justify reopening citizenship proceedings, we intend to renew Mr. Galan's claim to U.S. citizenship before the Immigration Judge. To that end, we will be seeking a change of venue to the Harlingen District, which is not only where he has counsel, but where his U.S. citizen source parent, and most of his other witnesses, reside.

If the charging document has not been filed, and Dallas would consider simply transferring him to PISPC, that would simplify matters for all concerned. Alternatively, I would appreciate receiving notice when he is scheduled for a hearing, so that I may file an E-28, and motion for change of venue.

Thank you for your prompt consideration.

Sincerely,

Lisa S. Brodyaga,
Attorney at Law

Encl/  As stated.

Case 1:01-cv-00209   Document 1   Filed in TXSD on 12/19/2001   Page 16 of 104



**U.S. Department of Justice**
Immigration and Naturalization Service

A30 379 730

---

Office of the District Director

*8940 Fourwinds Drive*
*San Antonio, TX 78239*

January 5, 2001

Enrique Galan-Gonzalez
C/O Cleofus Galan
101 E. Melton Park #2
Mercedes, Texas 78570

RE: N-600. Application for Certificate of Citizenship filed November 2, 2000

Dear Mr. Galan:

The records of this Service indicate that a previous Application for Certificate of Citizenship filed for you on August 12, 1969, was denied by this Service on March 30, 1970. You were given the opportunity to appeal the denial of the application but did not appeal the decision

Title 8, Code of Federal Regulations, Part 341.6 states in pertinent part:

> . . . . . . .After an application for a Certificate of Citizenship has been denied and the appeal time has run, a second application submitted by the same individual shall be rejected and the applicant instructed to submit a motion for reopening or reconsideration in accordance with 8 CFR 103.5. The motion shall be accompanied by the rejected application and the fee specified in 8 CFR 103 7 reduced by the amount of the fee paid with the rejected application. A decision shall be issued with notification of appeal rights in all Certificate of Citizenship cases, including any case denied due to the applicant's failure to prosecute the application.

Title 8, Code of Federal Regulations, Part 103.5(a) states in pertinent part:

> (1)(i)....Any motion to reconsider an action by the Service filed by an applicant or petitioner must be filed within 30 days of the decision that the motion seeks to reconsider. Any motion to reopen a proceeding before the Service filed by an applicant or petitioner, must be filed within 30 days of the decision that the motion seeks to reopen.

Case 1:01-cv-00209 Document 1 Filed in TXSD on 12/19/2001 Page 17 of 104

(2) .. A motion to reopen must state the new facts to be proved in the reopened proceeding and be supported by affidavits or other documentary evidence. ..

(3) ...A motion to reconsider must state the reasons for reconsideration and be supported by any pertinent precedent decisions to establish that the decision was based on an incorrect application of law or Service policy. A motion to reconsider a decision on an application or petition must, when filed, also establish that the decision was incorrect based on the evidence of record at the time of the initial decision.

(4) ...A motion that does not meet the applicable requirements shall be dismissed. ..

The instant application does not contain any evidence that would overcome the grounds for denial of your previously filed application. It also does not meet the requirements of Title 8 CFR 103.5 to be considered a motion to reopen or a motion to reconsider.

The initial application was denied because your mother's testimony established that she did not have sufficient physical presence in the United States prior to your birth in order for you to acquire United States citizenship. The instant application contains no evidence or argument that alleges the initial decision was erroneous. The only conflicting evidence presented with this application is an affidavit from your mother's uncle who, at age 78, testified concerning your mother's physical presence in the United States. His testimony differs from that of your mother when she testified in 1969, at age 40. However, even the affidavit of your mother's uncle does not state that he knew your mother's whereabouts in the United States for the period of time she was required to be physically present in the United States. The evidence presented fails to establish any justification to reopen or reconsider the previously denied application

In view of the foregoing, the N-600, Application for Certificate of Citizenship, you filed on November 02, 2000, is hereby rejected. The application and supporting documents are returned herewith.

Sincerely,

Kenneth L. Pasqdarell
District Director

# NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE

In re: **Enrique GALAN - GONZALEZ**

DATE **11 / 2 / 00**

FILE No. **A 30 379 730** (A19 141 855)

I hereby enter my appearance as attorney for (or representative of), and at the request of, the following named person(s):

NAME **same (currently detained)**

[ ] Petitioner [ ] Beneficiary [X] Applicant

ADDRESS (Apt. No.) (Number & Street) (City) (State) (ZIP Code)

**C/o Cleofas Galan  101 E Melton Park # 2  Mercedes Tx  78570**

NAME

[ ] Petitioner [ ] Beneficiary [ ] Applicant

ADDRESS (Apt. No.) (Number & Street) (City) (State) (ZIP Code)

### Check Applicable Item(s) below:

[X] 1. I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia **Texas** (Name of Court) and am not under a court or administrative agency order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

[ ] 2. I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

[ ] 3. I am associated with _____, the attorney of record who previously filed a notice of appearance in this case and my appearance is at his request. (*If you check this item, also check item 1 or 2 whichever is appropriate.*)

[ ] 4. Others (Explain fully.)

Lisa Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

SIGNATURE

COMPLETE ADDRESS

NAME (Type or Print) **Lisa S. Brodyaga**

TELEPHONE NUMBER **(956) 421 3226**

PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS: **Lisa S. Brodyaga** (Name of Attorney or Representative)

THE ABOVE CONSENT TO DISCLOSE IS IN CONNECTION WITH THE FOLLOWING MATTER:

| NAME OF PERSON CONSENTING | SIGNATURE OF PERSON CONSENTING | DATE |
|---|---|---|
| | **Enrique G Galan** | |

(*NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.*)

Form G-28
(Rev. 10-25-79)N

(OVER)

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service

I N S
HARLINGEN, TEXAS
DISTRICT OFFICE

11/02/00

**0007**
ENRIQUE GALVAN GONZA
#
A30379730 #
N-600              160.00
SUBTTL            160.00
CK 3625 #
CHECK      160.00

        1  ITEMS

    3421 001     14:08
    THANK YOU

U.S. DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE

# APPLICATION FOR CERTIFICATE OF CITIZENSHIP

OMB No. 1115-0018

**FEE STAMP**

Take or mail this application to:
**IMMIGRATION AND NATURALIZATION SERVICE**

*(Print or type)*   ENRIQUE GALAN-GONZALEZ   née   Same
(Full, True Name, without Abbreviations)   (Maiden name, if any)

Date   11/2/00

c/o Cleofas Galan   (detained)
(Apartment number, Street address, and, if appropriate, "in care of")

101 E Melton Park #2
(City)   (County)   (State)   (ZIP Code)

Mercedes, Tx 78570
(Telephone Number)

**ALIEN REGISTRATION**
No. 30 379 730

**(SEE INSTRUCTIONS. BE SURE YOU UNDERSTAND EACH QUESTION BEFORE YOU ANSWER IT.)**

I hereby apply to the Commissioner of Immigration and Naturalization for a certificate showing that I am a citizen of the United States of America.

(1) I was born in   Est. Ramirez, Tamps   Mexico   on   12/22/55
(City)   (State or country)   (Month)   (Day)   (Year)

(2) My personal description is: Sex   Male ; complexion   Medium   color of eyes   Brown ; color of hair   Black ;
height   5   feet   10   inches; weight   180   pounds; visible distinctive marks   10/26/70
Marital status:   ☐ Single;   ☒ Married;   ☐ Divorced;   ☐ Widow(er).

(3) I arrived in the United States at   Hidalgo   Texas   on   10/26/70
(City and State)   (Month)   (Day)   (Year)
under the name   Same   by means of   LPR
(Name of ship or other means of arrival)

☐ on U.S. Passport No.   ......   issued to me at   ......   on   ......
(Month)   (Day)   (Year)
☒ on an Immigrant Visa.   ☐ Other (specify)   ......

**(4) FILL IN THIS BLOCK ONLY IF YOU ARRIVED IN THE UNITED STATES BEFORE JULY 1, 1924.**

(a) My last permanent foreign residence was   ......
(City)   (Country)

(b) I took the ship or other conveyance to the United States at   ......
(City)   (Country)

(c) I was coming to   ......   at   ......
(Name of person in the United States)   (City and State where this person was living)

(d) I traveled to the United States with   ......
(Names of passengers or relatives with whom you traveled, and their relationship to you, if any)

(5) Have you been out of the United States since you first arrived?   ☒ Yes   ☐ No:   If "Yes" fill in the following information for every absence.

| DATE DEPARTED | DATE RETURNED | NAME OF AIRLINE, OR OTHER MEANS USED TO RETURN TO THE UNITED STATES | PORT OF RETURN TO THE UNITED STATES |
|---|---|---|---|
| 4/90 | 4/90 | Deported   returned | Progreso, Tx |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

(6) I   have not   filed a petition for naturalization.
(have)   (have not)

*(If "have", attach full explanation.)*

**TO THE APPLICANT.—Do not write between the double lines below.   Continue on next page.**

| ARRIVAL RECORDS EXAMINED | ARRIVAL RECORD FOUND |
|---|---|
| Card index   ...... | Place   ......   Date   ...... |
| Index books   ...... | Name   ...... |
| Manifests   ...... |  |
|  | Manner   ...... |
|  | Marital status   ......   Age   ...... |
|  | (Signature of person making search) |

Form N-600 (Rev. 04/11/91) Y

(1)

(7) I claim United States citizenship through my (check whichever applicable) ☐ her; ☒ mother; ☐ both parents;

☐ adoptive parent(s)   ☐ husband

(8) My father's name is _Saul Galan – Sandoval_, he was born on _9/10/27_
(Month) (Day) (Year)

at _San Luis Potosi, Mx_ ; and resides at _Mercedes, Tx   101 E._
(City) (State or country)                                   (Street address, city, and State or country. If dead, write
_Melton Park #2_ He became a citizen of the United States by ☐ birth; ☐ naturalization on ...............................
"dead" and date of death.)                                              (Month) (Day) (Year)

in the .............................................................   Certificate of Naturalization No. ..............................;
(Name of court, city, and State)

☐ through his parent(s), and .................................. issued Certificate of Citizenship No. A or AA .......................
(was) (was not)

(If known) His former Alien Registration No. was ..............................................................

He ............ lost United States citizenship. (If citizenship lost, attach full explanation.)
(has) (has not)

He resided in the United States from _1968_ to _present_ from ............. to ............ ; from ............ to .............
(Year)      (Year)       (Year)       (Year)       (Year)       (Year)

from ............ to ............ ; from ............ to ............ ; I am the child of his _1st_ marriage.
(Year) (Year)       (Year) (Year)                                 (1st, 2d, 3d, etc.)

(9) My mother's present name is _Cleofas Galan_ ; her maiden name was _Celia Cleofas Gonzalez_

she was born on _3/25/29_ ; at _Falfurrias, Texas_ ; she resides
(Month) (Day) (Year)           (City)                        (State or country)

at _101 E. Melton Park, #2 Mercedes, Tx_ She became a citizen of the United States
(Street address, city, and State or country. If dead, write "dead" and date of death.)

by ☒ birth; ☐ naturalization under the name of .........................................................................

on ............................... in the .........................................................................
(Month) (Day) (Year)                        (Name of court, city, and State)

Certificate of Naturalization No. .............................; ☐ through her parent(s), and ....................... issued Certificate
(was) (was not)

of Citizenship No. A or AA .............................. (If known) Her former Alien Registration No. was ......................

She _has not_ lost United States citizenship. (If citizenship lost, attach full explanation.) _absence (51–52: in + out)_
(has) (has not)                                                  _3 mos_

She resided in the United States from _1929_ to _30_ ; from _1938_ to _47_ ; from _48_ to _52_ ; from ............
(Year) (Year)       (Year) (Year)       (Year) (Year)       (Year)

to ............ ; from ............ to ............ ; I am the child of her ............ marriage.
(Year)       (Year) (Year)                       (1st, 2d, 3d, etc.)

(10) My mother and my father were married to each other on _11/3/51_ at _Estacion Ramirez_
(Month) (Day) (Year)       (City)       (State or country)

(11) If claim is through adoptive parent(s):

I was adopted on ............................... in the .........................................................
(Month) (Day) (Year)                              (Name of Court)

at ............................... by my .........................................................
(City or town) (State) (Country)                        (mother, father, parents)

who were not United States citizens at that time.

(12) My ............ served in the Armed Forces of the United States from .........................................................
(father) (mother)                                                       (Date)

to ............ and ............ honorably discharged.
(Date)       (was) (was not)

(13) I _have not_ lost my United States citizenship. (If citizenship lost, attach full explanation.)
(have) (have not)

(14) I submit the following documents with this application:

| Nature of Document | Names of Persons Concerned |
|---|---|
| B/C + Baptismal | Celia Cleofas Gonzalez (mother) |
| Laundry Workers Card | same |
| Soc Security + unemployment cards | same |
| Social Security printout | same |
| Decl. of Romualdo Lozano + Reyes Montemayor | |
| B/C of applicant + M/C of parents in A-file | |

(2)

(15) Fill in this block if your brother, sister, mother or father ever applied to the Immigration Service for a certificate of citizenship.

| NAME OF RELATIVE | RELATIONSHIP | DATE OF BIRTH | WHEN APPLICATION SUBMITTED | CERTIFICATE NO. AND FILE NO., IF KNOWN, AND LOCATION OF OFFICE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

(16) Fill in this block only if you are now or ever have been a married woman. I have been married ............... time(s), as follows:

| DATE MARRIED | NAME OF HUSBAND | CITIZENSHIP OF HUSBAND | IF MARRIAGE HAS BEEN TERMINATED: | |
|---|---|---|---|---|
| | | | Date Marriage Ended | How Marriage Ended (Death or divorce) |
| | | | | |
| | | | | |

(17) Fill in this block only if you claim citizenship through a husband. (*Marriage must have occurred prior to September 22, 1922.*)

Name of citizen husband ................................; he was born on .......... (Month) (Day) (Year)

at ........................................; and resides at .......... (City) (State or country) (Street address, city, and State or country. If dead, write "dead" and date of death.) He became a citizen of the United States by ☐ birth; ☐ naturalization on .......... (Month) (Day) (Year)

in the ........................................ Certificate of Naturalization No. ................; (Name of court, city, and State)

☐ through his parent(s), and .......... (was) (was not) issued Certificate of Citizenship No. A or AA ..........

He .......... (has) (has not) since lost United States citizenship. (*If citizenship lost, attach full explanation.*)

I am of the .......... race. Before my marriage to him, he was married .......... time(s), as follows: (1, 2, 3, etc.)

| DATE MARRIED | NAME OF WIFE | IF MARRIAGE HAS BEEN TERMINATED: | |
|---|---|---|---|
| | | Date Marriage Ended | How Marriage Ended (Death or divorce) |
| | | | |
| | | | |

(18) Fill in this block only if you claim citizenship through your stepfather. (*Applicable only if mother married U.S. Citizen prior to September 22, 1922.*)

The full name of my stepfather is ........................................; he was born on .......... (Month) (Day) (Year)

at ........................................; and resides at .......... (City) (State or country) (Street address, city, and State or country. If dead, write "dead" and date of death.) He became a citizen of the United States by ☐ birth; ☐ naturalization on .......... (Month) (Day) (Year)

in the ........................................ Certificate of Naturalization No. ................; (Name of court, city, and State)

☐ through his parent(s), and .......... (was) (was not) issued Certificate of Citizenship No. A or AA ..........

He .......... (has) (has not) since lost United States citizenship. (*If citizenship lost, attach full explanation.*)

He and my mother were married to each other on .......... (Month) (Day) (Year) at .......... (City and State or country)

My mother is of the .......... race. She .......... (was) (was not) issued Certificate of Citizenship No. A ..........

Before marrying my mother, my stepfather was married .......... time(s), as follows: (1, 2, 3, etc.)

| DATE MARRIED | NAME OF WIFE | IF MARRIAGE HAS BEEN TERMINATED: | |
|---|---|---|---|
| | | Date Marriage Ended | How Marriage Ended (Death or divorce) |
| | | | |
| | | | |

(19) I _have_ previously applied for a certificate of citizenship on _196.9_, at _San Antonio, 1_
(have) (have not) (Date) (Office)

(20) Signature of person preparing form, if other than applicant. I declare that this document was prepared by me at the request of the applicant and is based on all information of which I have any knowledge.

SIGNATURE: _[signature]_

ADDRESS: Lisa Brodyaga, Attorney DATE: 11/2/00
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

(SIGN HERE) _Enrique Galan by TB_
(Signature of applicant or parent or guardian)

(3)

**APPLICANT.—Do not fill in or sign anything on this page**

# AFFIDAVIT

I, the ................................................................, do swear
(Applicant, parent, guardian)
that I know and understand the contents of this application,
signed by me, and of attached supplementary pages num-
bered ( ) to ( ), inclusive; that the same are true to the
best of my knowledge and belief; and that corrections num-
bered ( ) to ( ) were made by me or at my request.

Subscribed and sworn to before me upon examination of the
applicant (parent, guardian) at ........................ ..............
...................., this ............... day of ........................, 19....
and continued solely for:

......................................................
(Signature of applicant, parent, guardian)

......................................................
(Officer's Signature and Title)

## REPORT AND RECOMMENDATION ON APPLICATION

On the basis of the documents, records, and persons examined, and the identification upon personal appearance of the underage
beneficiary, I find that all the facts and conclusions set forth under oath in this application are ...... .... true and correct; that the
applicant did .......... derive or acquire United States citizenship on ............................................, through
(Month)      (Day)      (Year)

and that (s)he ............... been expatriated since that time. I recommend that this application be ............... and that
(has) (has not)                                                                                              (granted) (denied)
............... Certificate of citizenship be ............ issued in the name of ------------------------------------------
(A)    (AA)
In addition to the documents listed in Item 14, the following documents and records have been examined:

| Person Examined | Address | Relationship to Applicant | Date Testimony Heard |
|---|---|---|---|
| ........................... | ........................... ......... ........... | ........................ | ............................... |
| | ........................... ...... ............ | | |
| ........................... | ........................... ......... ........... | ........................ | ............................... |
| | ... ......... ..... ........................... ......... .......... | | |

Supplementary Report(s) No.(s) .......... ........................ Attached.
Date ------------------------, 19----.

......................................................
(Officer's Signature and Title)

I do ........ ..... concur in the recommendation.

Date .... ............................. ...., 19.....

......................................................
(Signature of District Director or Officer in Charge)

(4)

# STATE O TEXAS

## TEXAS DEPARTMENT OF HEALTH
### BUREAU OF VITAL STATISTICS

FILE NO  19707-29

**NAME** Celia Cleofas Gonzalez

**DATE OF BIRTH** 3-25-29    SEX  Female

**PLACE OF BIRTH** Falfurrias, Texas

**FATHER** Cruz Gonzalez    **MOTHER** Benita Montemayor

**DATE FILED** 3-30-29    **DATE ISSUED** 3-16-88

This is a true certification of name and birth facts
as recorded in this office. Issued under authority of
Rule 54a, Article 4477, Revised Civil Statutes of Texas

*J. L. Howze*

J. L. HOWZE
STATE REGISTRAR

CERTIFICATION OF BIRTH

THE STATE OF TEXAS

TEXAS DEPARTMENT OF HEALTH



# The Holy Sacrament of Baptism

✠ This is to Certify ✠

That _Felix Diego de Gonzales_

_Child of Diego Gonzales_

and _Benita McChesney_

born in _California_ on _March 25, 29_

was Baptized _31 May_ 19__

according to the Rite of the Roman Catholic Church

_Juspardo Cruz_

Sponsors were _Elena Contagno_
_Elena Martinez_

as recorded in the Baptismal Register of this Church

_Rev. Joseph M. Andrade, Pastor_

Dated _2, 43_

**Laundry Workers' International Union**

## HONORABLE WITHDRAWAL CARD

Article 10, Sec. 3. THIS IS TO CERTIFY that the bearer hereof, BROTHER OR SISTER _____

_Celia Gonzalez_

whose name appears on the margin of this card in his or her own handwriting has paid all dues, assessments and demands and withdrawn in good standing from membership in Local

No. _120_

This card entitles this party to re-admission to the Local Union from which this can be issued at any time, unless otherwise ordered by the Local Union. Any ex-member out on withdrawal card and working under the jurisdiction of the Laundry Workers' International Union must re-deposit his or her withdrawal card with the local from which it was issued and transfer into the Local Union under whose jurisdiction he or she is working, if one exists in the city in which he or she is employed. Failure to comply with this rule cancels his or her withdrawal card. Local Unions are not compelled to accept withdrawal cards if member has committed any offense while out on withdrawal card which would be injurious to union principles. Also if Local Union is paying benefits and member has fallen into bad health or is liable to become a charge of Local or International Union, acceptance of withdrawal card can be refused by Local Union.

Given under our hands and the seal of Local Union No. _120_

(SEAL)    This _7_ day of _Aug_ 19_47_

_____ Secretary

_____ President    (Over)





# Social Security Administration
# Retirement, Survivors and Disability Insurance
## Earnings Record Information

From:   Office of Central Records Operations
        300 North Greene Street, Baltimore, Maryland 21201

Date: 4/13/99

Refer to: 32eB1m

Your Reference:

We are sending you the statement of earnings you requested for the number holder shown below.

| Number Holder's Name: | Social Security Number: |
|---|---|
| Celia G. Galan | 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 |

If we recently received earnings information, it may not yet be shown on this statement.

Please read the back of this letter for more information about Social Security records.

If you have any questions, you should call, write or visit any Social Security office. If you visit, please bring this letter. It will help us answer your questions.

Enclosures:
Original Letter
Earnings Statement   1826

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS        JOB:
VERSION 1984.002 * * *      FOR SSN 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      * * *


YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC      TOTAL


EMPLOYER NUMBER:  74-1034674
SALVADOR DAVO JR
DAVOS GROCERY STORE
BOX 1464
BROWNSVILLE  TX 78520-0000

1951       125.00        30.00                    $     155.00
```

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER   1997 MAY NOT BE SHOWN, OR ONLY
PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

                         PAGE 002 END

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS        JOB:
VERSION 1984.002 * * *     FOR SSN 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      * * *
```

FROM:  SOCIAL SECURITY ADMINISTRATION
       OFFICE OF CENTRAL RECORDS OPERATIONS
       BALTIMORE, MARYLAND  21235-0000


CLEOFAS GALAN                        NUMBER HOLDER NAME:
                                     CELIA G GALAN
101 E MELTON PARK DR
#2

MERCEDES            TX  78570

PERIOD REQUESTED    JANUARY 1946  THRU  DECEMBER 1951

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

EMPLOYER NUMBER:  74-0703860
FANNIN CLEANERS & IDEAL LAUNDRY
3208 LOUISIANA ST
HOUSTON  TX 77006-0000

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1947 |  | 208.44 | 141.63 | $ | 350.07 |

EMPLOYER NUMBER:  74-1051269
DELTA CANNING CO INC
BOX 795
RAYMONDVILLE  TX 78580-0000

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1949 |  |  |  | 80.60 $ | 80.60 |
| 1950 | 31.00 |  |  | $ | 31.00 |

EMPLOYER NUMBER:  74-1074755
VALU CANNING CORP
PO BOX 411
RAYMONDVILLE  TX 00000-0000

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1949 |  |  |  | 34.50 $ | 34.50 |

EMPLOYER NUMBER:  74-1084790
VALLEY FARMERS COOPERATIVE ASSOC
EDCOUCH  TX 00000-0000

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1950 |  | 3.40 |  | $ | 3.40 |

PAGE 001

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS           JOB:
VERSION 1984.002 * * *      FOR SSN 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        * * *


YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC      TOTAL


EMPLOYER NUMBER:  74-1034674
SALVADOR DAVO JR
DAVOS GROCERY STORE
BOX 1464
BROWNSVILLE  TX 78520-0000

1951      125.00       30.00                     $      155.00
```

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER   1997 MAY NOT BE SHOWN, OR ONLY
PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

                        PAGE 002 END

UNITED STATES DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE


In re

ENRIQUE GALAN GONZALEZ
A19 141 855

DECLARATION OF ROMUALDO LOZANO-FLORES

I, Romualdo Lozano-Flores, hereby declare under penalty of perjury
as follows:


I was born in Mexico, on May 26, 1925.  I am a naturalized U.S.
Citizen, currently residing at 809 Sunset Drive, Harlingen, Texas.


I first met Cleofas Gonzalez when I was about nineteen or twenty
years old, at a farmworker camp, called "Engleman's Garden," in
Elsa, Texas. She was at that time about fifteen years old, and was
living with her father.  I would see her regularly, sometimes
daily, and at least two or three times a week, for the seven or
eight months that I was there.  It was my understanding at that
time that she had already been there for some time when I met her,
possibly a year or two, and was later sent off to live with
relatives in the Galveston, Texas, area.  After I left Engleman's,
I did not see her father again for about five years.  We met by
chance at a bus station in the Rio Grande Valley, in about 1950,
but I do not recall whether it was in Raymondville, Weslaco, or
some other Valley town.  We greeted each other, and chatted
briefly, but I do not recall whether he said anything about where
she was living at that time.  I then lost contact with the family
until about two or three years ago.  As it turns out, Cleofas'
brother Miguel is a friend of my daughter.  We saw each other again
last year, for the first time since the mid-1940's, and it was
through him that she located me to come give this declaration as to
my memories of her in the United States during those years.

The foregoing has been translated into Spanish for me by Attorney
Lisa Brodyaga, and is true and correct to the best of my knowledge
and belief.

Further Declarant sayeth not.


_Romualdo Lozano-Flores_
Romualdo Lozano-Flores


## CERTIFICATE OF TRANSLATOR

I, Lisa S. Brodyaga, declare that the foregoing was prepared by me
on the basis of the contemporaneous oral statements of the
Declarant, that I read the same to him in Spanish, that he affirmed
the truth of its contents, and in witness thereof, did affix his
signature this 29th day of October, 2000, in Rangerville, Texas.


_Lisa S. Brodyaga_
Lisa S. Brodyaga



# TEXAS
## DEPARTMENT OF PUBLIC SAFETY
### DRIVER LICENSE

**CLASS:C**       **DL:**   00127440
**DOB: 05-26-25**          **HT: 5-08**
**EXPIRES: 05-26-01**      **EYES: BRN**
**REST:**                  **SEX: M**
**END:**

LOZANO,ROMUALDO FLORES
809 SUNSET DR
HARLINGEN TX 78550

90239001153

UNITED STATES DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE


In re

ENRIQUE GALAN GONZALEZ
A19 141 855

DECLARATION OF REYES MONTEMAYOR-GONZALEZ

I, Reyes Montemayor-Gonzalez, hereby declare under penalty of perjury as follows:

I was born in Mexico on March 11, 1922. I am a lawful permanent resident of the United States, and currently reside at the Labor Camp in Raymondville, Texas, No. 19. My mailing address is P.O. Box 567, Lyford, Texas 78569.

Cleofas Gonzalez is my niece, and I have known her all my life. Her mother was my brother.

I first came to the United States to live in 1942. At that time, I lived in Raymondville, Texas, and Cleofas lived in San Antonio, Texas. She came to live with her father in Engleman's in about 1943, and stayed there until about 1945. I recall that I visited them in Engleman's once before I was married, which occurred in 1944. From Engleman's, she went to live with my brother Arturo Montemayor, in Galveston, where she stayed until the end of 1947, when she went to Mexico for a few months. She returned in early 1948, and came to live with us in Raymondville, Texas. She stayed with me until around the middle of 1951, including for the better part of her first pregnancy. She met her husband in Mexico in late 1950, and spent some time with him there, but until her first child was born, she spent most of her time with me. Even after he was born, she used to bring him to Raymondville for regular visits, staying with us for two to three days, about every other week. It

was only after her second child was born that she quit coming to stay with us in Raymondville on a regular basis, and settled into her life with her new family in Mexico.

The foregoing has been translated into Spanish for me by Attorney Lisa Brodyaga, and is true and correct to the best of my knowledge and belief.

Further Declarant sayeth not.

_____
Reyes Montemayor-Gonzalez

## CERTIFICATE OF TRANSLATOR

I, Lisa S. Brodyaga, declare that the foregoing was prepared by me on the basis of the contemporaneous oral statements of the Declarant, that I read the same to him in Spanish, that he affirmed the truth of its contents, and in witness thereof, did affix his signature this 29th day of October, 2000, in Rangerville, Texas.

_____
Lisa S. Brodyaga



# RESIDENT ALIEN

MONTEMAYOR-GONZALEZ, REYES

03 11 22

A006001916

07 08 07



01M PGR 541018 582   7171003024

A1USA006001916<01<9707<<<<<<<<
2203115M0707088<<<<<<90FC82E39
MONTEMAYOR<GONZALEZ<<REYES<<<<

Case 1:01-cv-00209   Document 1   Filed in TXSD on 12/19/2001   Page 38 of 104

F I L E   C O P Y

# United States Court of Appeals

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**CHARLES R. FULBRUGE III**
**CLERK**

TEL. 504-589-6514
600 CAMP STREET
NEW ORLEANS, LA 70130

July 24, 2001

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 01-60461 Galan v. Ashcroft
       Agency No.  A30 379 730

The court has granted an extension of time to and including 8/22/01
for filing the certified administrative record in this case.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: _____
    Kenneth Lotz, Deputy Clerk
    504-589-6514 ITCM # 160

Ms Lisa S Brodyaga
Ms Heather Renee Phillips

MOT-2

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ENRIQUE GALAN,                    )
                                  )
                Petitioner,       )
                                  )        No. 01-60461
        v.                        )
                                  )
JOHN D. ASHCROFT                  )
                                  )
                Respondent.       )

U.S. COURT OF APPEALS

**F I L E D**

JUL 2 4 2001

CHARLES R. FULBRUGE III
CLERK

**MOTION FOR AN EXTENSION OF TIME
TO FILE THE CERTIFIED ADMINISTRATIVE RECORD**

Respondent, by its undersigned counsel, hereby moves the Court

for a 30-day extension of time to August 22, 2001, within which to

file the certified administrative record in this case.  The record

in this case was due on July 23, 2001.

Respondent has requested no previous extension to file this

record.  This motion is made in good faith and not for the purpose

of delay.

This extension is necessary in order to permit the Immigration

Naturalization Service to adequately prepare the record in this case

in a reasonable amount of time.

The Opposed / Unopposed
Motion _for ext. of time to_
_file the cert. admin. record_
Is Granted in Part  Denied

_A. Lopez_                    7/24/01

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ENRIQUE GALAN,             )
                             )
          Petitioner,   )
                             )
        v.               )   No. 01-60461
                             )
JOHN D. ASHCROFT,      )
                             )
          Respondent.   )

## DECLARATION OF ANGELA L. GREEN

1.  I, Angela L. Green, am a Legal Assistant employed by the United States Department of Justice, Civil Division, Office of Immigration Litigation.

2.  Part of my responsibilities include the timely filing of certified administrative records in the Fifth Circuit Court of Appeals.

3.  I regularly communicate to the Immigration Naturalization Service (INS) the need for preparation and certification of administrative records for this circuit. I periodically follow-up the initial call to monitor the progress of the INS in meeting the record due dates.

4.  The record in this case was due on July 23, 2001. However, additional time is needed for INS to receive the file and prepare a certified copy of the record of proceedings for the Court. Therefore, a 30-day extension is requested in order to allow sufficient time for INS to prepare the record.

5.   Upon information and belief every endeavor is being made by this office and the INS to have the record filed in advance of the requested extension date.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on:   July 23, 2001


ANGELA L. GREEN
Legal Assistant
Office of Immigration Litigation

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the attached **Motion for an Extension of Time to File the Certified Administrative Record Out of Time** has been served upon the petitioner this **23rd** day of **July 2001**, by mailing a copy thereof, first-class postage prepaid, to:

Lisa A. Brodyaga, Esquire
Refugio De Rio Grande
17891 Landrum Park Road
San Benito, TX 78586


ANGELA L. GREEN
Legal Assistant
Office of Immigration Litigation
Civil Division
U.S. Department of Justice

Case 1:01-cv-00209   Document 1   Filed in TXSD on 12/19/2001   Page 43 of 104

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ENRIQUE GALAN,                          )
                                        )
                   Petitioners,         )
                                        )
         v.                             )     No. 01-60461
                                        )
                                        )     A30 379 730
JOHN D. ASHCROFT,                       )
                                        )
                   Respondent.          )

## DECLARATION OF ANGELA L. GREEN

1.  I, Angela L. Green, am a Legal Assistant, employed by
the United States Department of Justice, Civil Division, Office
of Immigration Litigation.

2.  Part of my responsibilities includes the timely filing
of certified administrative records in the Fifth Circuit Court of
Appeals.

3.  I regularly communicate to the Immigration
Naturalization Service (INS) the need for preparation and
certification of administrative records for this Circuit.  I
periodically follow-up the initial call to monitor the progress
of the INS in meeting the record due date.

4.  The record in this case was originally due on July 23,
2001, but was not received in our office from INS.  Additional
time to August 22, 2001 was granted to allow the INS sufficient

Case 1:01-cv-00209  Document 1   Filed in TXSD on 12/19/2001   Page 44 of 104

time to locate the administrative record for filing.  However,

the INS is still unable to locate the INS file, therefore, a

second 30-day extension of time to file the administrative record

is needed to allow the INS additional time to locate the file.

I declare under penalty of perjury that the foregoing is

true and correct.


Executed on: August 22, 2001

ANGELA L. GREEN
Legal Assistant
Office of Immigration Litigation

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2001, a copy of the

attached **Second Motion for an Extension of Time to File the**

**Certified Administrative Record Out of Time** was served by Federal

Express, upon the petitioner's counsel:

> Lisa A. Brodyaga, Esquire
> Refugio De Rio Grande
> 17891 Landrum Park Rd.
> San Benito, TX  78586

ANGELA L. GREEN
Legal Assistant
Office of Immigration Litigation
Civil Division
U.S. Department of Justice

Case 1:01-cv-00209   Document 1   Filed in TXSD on 12/19/2001   Page 46 of 104

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ENRIQUE GALAN,                          )
                                        )          U. S. COURT OF APPEALS
                   Petitioners,         )              FILED
                                        )
         v.                             )          AUG 2 2 2001
                                        )     No. 01-60461 CHARLES R. FULBRUGE III
                                        )     A30 379 730              CLERK
JOHN D. ASHCROFT                        )
                                        )
                   Respondent.          )

SECOND MOTION FOR AN EXTENSION OF TIME
TO FILE THE CERTIFIED ADMINISTRATIVE RECORD OUT OF TIME

     Respondent, by its undersigned counsel, hereby moves the Court

for a second 30-day extension of time from August 22, 2001 to

September 21, 2001 within which to file the certified

administrative record in this case.

     This motion is made in good faith and not for the purpose of

delay. This extension is necessary because the Immigration

Naturalization Service needs additional time to locate the INS

file. In addition, the Office of Immigration Litigation needs

sufficient time to review and process the record after it is

received from the INS Headquarters.

Case 1:01-cv-00209 Document 1 Filed in TXSD on 12/19/2001 Page 47 of 104

In support thereof, the Court is respectfully referred to

the Declaration of Angela L. Green, filed herewith.

Respectfully submitted,

DAVID W. OGDEN
Acting Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director

HEATHER PHILLIPS, Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P. O. Box 878, Ben Franklin Station
Washington, D.C. 20044
202-616-9343

Executed on: August 22, 2001

- 2 -

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 01-60461

ENRIQUE GALAN

       Petitioner

v.

JOHN ASHCROFT, U S Attorney General

       Respondent

U. S. COURT OF APPEALS
**FILED**

[SEP 0 4 2001

CHARLES R. FULBRUGE III
CLERK

-----------------------
Petition for Review of an Order of the
Board of Immigration Appeals
-----------------------

O R D E R:

      IT IS ORDERED that respondent's motion for a second 30-day extension of time, or, to and including September 21, 2001, to file the administrative record is *granted*.

 

                              ROBERT M. PARKER
                   UNITED STATES CIRCUIT JUDGE

# FORM FOR APPEARANCE OF COUNSEL

*...eys admitted to the Bar of this Court since October 1, 1981 may sign this form and practice before the Court. An*
*...tion for admission is incorporated. Two persons from the same organization or firm may sign this form.*

No. 01-60461

_Enrique Galan_
(Plaintiff)                    vs.                    _John Ashcroft_
                                                        (Defendant)

Clerk will enter my/our appearance as Counsel for   _Enrique Galan_

_____
(Please list names of all parties represented)

o IN THIS COURT is    ☑ Petitioner(s)    ☐ Respondent(s)    ☐ Amicus Curiae
                      ☐ Appellant(s)     ☐ Appellee(s)      ☐ Intervenor

...ertify that I am a member of the Bar of the Fifth Circuit Court of Appeals, or application for admission is being made below.

**U.S. COURT OF APPEALS**

_____          _____
(Signature)                             (Signature) **FILED**

Lisa Brodyaga, Attorney                 _____
REFUGIO DEL RIO GRANDE                  (Type or Print Name)
17891 Landrum Park Road                 **JUN 21 2001**
San Benito, Texas 78586
                                        _____
                                        (Title, If Any)
_____
(Firm or Organization)                  _____
                                        (Firm or Organization)
                                        **CHARLES R. FULBRUGE III**
                                        **CLERK**

Social Security No. 028 34 8786         Social Security No. _____

Date of Birth 9/21/40  Sex: ☐ M  ☑ F   Date of Birth _____ Sex: ☐ M  ☐ F

Resident State/Bar No. 03052890         Resident State/Bar No. _____

Street Address   Lisa Brodyaga, Attorney              Suite _____
                 REFUGIO DEL RIO GRANDE
City & State     17891 Landrum Park Road   Zip _____  Phone (956) 4213226  Fax (956) 4213423
                 San Benito, Texas 78586

NOTE: When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel to whom notification is to be sent, with the understanding that if other counsel should be informed *he or she will perform that function.* If lead counsel has not signed above, lead counsel *must* complete his or her own form for appearance of counsel. The person to be notified in this case is:

Name of Lead Counsel (Type or Print) _____

## UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
## APPLICATION AND OATH FOR ADMISSION
600 Camp Street, New Orleans, LA 70130

Name _____
          (Last)              (First)                    (Middle)

Firm or Agency _____

Street Address _____  Suite _____

City & State _____ Zip _____ Social Security No. _____

Phone (     ) _____ Resident State/Bar No. _____ Date of Birth _____ Sex: ☐ M  ☐ F

ADMISSION FEE: Admission fees may be paid by personal check, certified check or postal money order. Please make payable to the Librarian, United States Court of Appeals. Basis for amount of fee may be found in 5TH CIR. R. 46, which states:

"Only attorneys admitted to the Bar in this Court may practice before the Court. Admission to the Bar of this Court is governed by Fed. R. App. P. 46. Each attorney shall pay to the Clerk an admission fee of $50, which shall be transferred to the Library Fund. An attorney who is appointed by the Court to represent an appellant in forma pauperis and an attorney who appears on behalf of the United States must have all other qualifications for admission, but shall be admitted to practice in this Court without payment of an admission fee."

FEE DATA: (Check One)    ☐ **Cash**    ☐ **Check**    ☐ **Court Apptd.**    ☐ **U.S. Counsel**

CASE NUMBER (If Any): _____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ENRIQUE GALAN,                      )
                                    )
                  Petitioners,      )
                                    )
            v.                      )      No. 01-60461
                                    )
                                    )      A30 379 730
JOHN D. ASHCROFT,                   )
                                    )
                  Respondent.       )

## DECLARATION OF ANGELA L. GREEN

1.  I, Angela L. Green, am a Legal Assistant, employed by
the United States Department of Justice, Civil Division, Office
of Immigration Litigation.

2.  Part of my responsibilities includes the timely filing
of certified administrative records in the Fifth Circuit Court of
Appeals.

3.  I regularly communicate to the Immigration
Naturalization Service (INS) the need for preparation and
certification of administrative records for this Circuit.  I
periodically follow-up the initial call to monitor the progress
of the INS in meeting the record due date.

4.  The record in this case was originally due on July 23,
2001, but was not received in our office from INS.  Additional
time to August 22, 2001 was granted to allow the INS sufficient

time to locate the administrative record for filing.  However,

the INS is still unable to locate the INS file, therefore, a

second 30-day extension of time to file the administrative record

is needed to allow the INS additional time to locate the file.

I declare under penalty of perjury that the foregoing is

true and correct.

Executed on: August 22, 2001

ANGELA L. GREEN
Legal Assistant
Office of Immigration Litigation

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2001, a copy of the

attached **Second Motion for an Extension of Time to File the**

**Certified Administrative Record Out of Time** was served by Federal

Express, upon the petitioner's counsel:


Lisa A. Brodyaga, Esquire
Refugio De Rio Grande
17891 Landrum Park Rd.
San Benito, TX  78586


ANGELA L. GREEN
Legal Assistant
Office of Immigration Litigation
Civil Division
U.S. Department of Justice

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ENRIQUE GALAN,                        )
                                      )
              Petitioners,            )
                                      )
        v.                            )    No. 01-60461
                                      )
                                      )    A30 379 730
JOHN D. ASHCROFT                      )
                                      )
              Respondent.             )

*COURT OF APPEALS*
*RECEIVED*
*AUG 23 2001*
*NEW ORLEANS, LA.*

U.S. COURT OF APPEALS
**FILED**
AUG 2 2 2001
CHARLES R. FULBRUGE III
CLERK

SECOND MOTION FOR AN EXTENSION OF TIME
TO FILE THE CERTIFIED ADMINISTRATIVE RECORD OUT OF TIME

Respondent, by its undersigned counsel, hereby moves the Court

for a second 30-day extension of time from August 22, 2001 to

September 21, 2001 within which to file the certified

administrative record in this case.

This motion is made in good faith and not for the purpose of

delay. This extension is necessary because the Immigration

Naturalization Service needs additional time to locate the INS

file. In addition, the Office of Immigration Litigation needs

sufficient time to review and process the record after it is

received from the INS Headquarters.

In support thereof, the Court is respectfully referred to the Declaration of Angela L. Green, filed herewith.

Respectfully submitted,

DAVID W. OGDEN
Acting Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director

HEATHER PHILLIPS, Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P. O. Box 878, Ben Franklin Station
Washington, D.C. 20044
202-616-9343

Executed on: August 22, 2001

- 2 -

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

─────────────────────

No. 01-60461

─────────────────────

ENRIQUE GALAN

      Petitioner

  v.

JOHN ASHCROFT, U S Attorney General

      Respondent

U.S. COURT OF APPEALS

# FILED

OCT 5   2001

CHARLES R. FULBRUGE III
             CLERK

-----------------------
Petition for Review of an Order of the
Board of Immigration Appeals
-----------------------

O R D E R:

    IT IS ORDERED that respondent's third motion for an
extension of time to file the certified administrative record,
to and including October 22, 2001, is *granted.*

ROBERT M. PARKER
UNITED STATES CIRCUIT JUDGE

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ENRIQUE GALAN,                    )
                                  )
                Petitioners,      )
                                  )
        v.                        )    No. 01-60461
                                  )
                                  )    A30 379 730
JOHN D. ASHCROFT,                 )
                                  )
                Respondent.       )

## DECLARATION OF ANGELA L. GREEN

1.   I, Angela L. Green, am a Legal Assistant, employed by
the United States Department of Justice, Civil Division, Office
of Immigration Litigation.

2.   Part of my responsibilities includes the timely filing
of certified administrative records in the Fifth Circuit Court of
Appeals.

3.   I regularly communicate to the Immigration
Naturalization Service (INS) the need for preparation and
certification of administrative records for this Circuit.  I
periodically follow-up the initial call to monitor the progress
of the INS in meeting the record due date.

4.   The record in this case was originally due on July 23,
2001, but was not received in our office from INS.  Additional
time to August 22, 2001 was granted to allow the INS sufficient

time to locate the administrative record for filing.  A second 30-day extension was filed in which the court granted the filing of the administrative record to September 21, 2001.  However, the INS is still unable to locate the INS file, therefore, a third 30-day extension of time to file the administrative record is needed to allow the INS additional time to locate the file.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on: September 20, 2001

ANGELA L. GREEN
Legal Assistant
Office of Immigration Litigation

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2001, a copy of the attached **Third Motion for an Extension of Time to File the Certified Administrative Record Out of Time** was served by Federal Express, upon the petitioner's counsel:

Lisa A. Brodyaga, Esquire
Refugio De Rio Grande
17891 Landrum Park Rd.
San Benito, TX  78586

*Angela L. Green*

ANGELA L. GREEN
Legal Assistant
Office of Immigration Litigation
Civil Division
U.S. Department of Justice

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED

SEP 20 2001

CHARLES R. FULBRUGE III
CLERK

ENRIQUE GALAN,                    )
                                  )
                Petitioners,      )
                                  )
        v.                        )    No. 01-60461
                                  )
                                  )    A30 379 730
                                  )
JOHN D. ASHCROFT                  )
                                  )
                Respondent.       )


THIRD MOTION FOR AN EXTENSION OF TIME
TO FILE THE CERTIFIED ADMINISTRATIVE RECORD OUT OF TIME

Respondent, by its undersigned counsel, hereby moves the Court
for a third 30-day extension of time from September 21, 2001 to
October 22, 2001 within which to file the certified administrative
record in this case.

This motion is made in good faith and not for the purpose of
delay. This extension is necessary because the Immigration
Naturalization Service needs additional time to locate the INS
file. In addition, the Office of Immigration Litigation needs
sufficient time to review and process the record after it is
received from the INS Headquarters.

*l*

In support thereof, the Court is respectfully referred to the Declaration of Angela L. Green, filed herewith.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Acting Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director

*Heather Phillips (DVB)*

HEATHER PHILLIPS, Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P. O. Box 878, Ben Franklin Station
Washington, D.C. 20044
202-616-9343

Executed on: September 20, 2001

Case 1:01-cv-00209   Document 1   Filed in TXSD on 12/19/2001   Page 61 of 104

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ENRIQUE GALAN,                    )
                                  )
v.                                )        No. 01-60461
                                  )
JOHN ASHCROFT, UNITED STATES      )
    ATTORNEY GENERAL.             )
_____    )

**PETITIONER'S OPPOSITION TO RESPONDENT'S THIRD MOTION FOR EXTENSION
OF TIME TO FILE THE CERTIFIED ADMINISTRATIVE RECORD OUT OF TIME
AND, IN LIEU THEREOF, MOTION THAT RESPONDENT BE REQUIRED TO FILE
THAT PORTION OF THE RECORD WHICH WAS IN THE HANDS OF THE DECISION-
MAKER AT THE TIME THE DECISION WAS MADE TO REINSTATE MR. GALAN'S
PRIOR DEPORTATION ORDER, *I.E.*, THE RECORD ON WHICH THE DECISION AND
ORDER REINSTATING THE PRIOR DEPORTATION ORDER ACTUALLY WAS BASED.**

Comes Petitioner herein, by and through the undersigned, and
respectfully files the instant opposition to the motion of
Respondent Ashcroft for a third extension of time in which to file
the administrative record out-of-time. In lieu thereof, Petitioner
urges that Respondent should be required to file, as the certified
administrative record, the "temporary" INS A-file which was
actually in the hands of the decision-maker at the time the
decision was made to reinstate Mr. Galan's prior deportation order.
In support thereof, Petitioner would respectfully show as follows:

I.   THE FACTS AND PROCEDURAL HISTORY

On August 12, 1969, when Petitioner was thirteen years old, an N-
600, application for Certificate of Citizenship, was filed on his
behalf. Said application was denied on or about March 30, 1970.
(A:5). [1] On November 2, 2000, with counsel, Mr. Galan filed an N-

_____

[1] The documents attached to the Petition for Review will be
referred to, as numbered below, as "Exhibit (A:__)." (1) Notice of

600 application in his own name and right.  Under 8 C.F.R. §292.5, any correspondence relating thereto was required to be served on counsel, not Mr. Galan.  Rather, the application was "rejected," [2] and returned directly to Mr. Galan, in care of his mother.  Counsel was not even served with a copy of the rejection notice. (A:5-7).

On May 17, 2001, the undersigned sent, by fax, copies of her G-28 (which G-28 was filed with INS in Harlingen, Texas, on November 2, 2000), and of the filing receipt for Mr. Galan's N-600, also filed on November 2, 2000, to Mr. Lawson, the INS Deportation Officer in Big Spring, Texas. (A:3). [3]  Shortly thereafter, Mr. Lawson called the undersigned, and advised her that Mr. Galan had been transferred to Dallas. *Id.* The undersigned then called Mr. Reynolds, INS General Counsel, in Dallas, Texas, explained the situation, and faxed the same documents to him. *Id.*  The cover letters advised both officers that Mr. Galan wished to pursue his claim to U.S. citizenship in removal proceedings. *Id.* Between May 17, 2001, and May 27, 2001, no communication was received from INS about the case. (A:4).

---

Intent/Decision to Reinstate Prior Order; (2) Notice of Release and Arrival; (3) letters dated May 17, 2001, to J.T. Lawson, and Jim Reynolds; (4) letter dated May 27, 2001 to J.T. Lawson, Jim Reynolds, and E.M. Trominski; (5) Letter from INS to Mr. Galan, denying the N-600, dated January 5, 2001; (6) a file stamped G-28, dated November 2, 2000; and (7) the filing receipt for the N-600, and the N-600, with supporting documents.

    [2] Mr. Galan will argue that it was improperly rejected, as it was not "submitted by the same individual" within the meaning of 8 C.F.R. §341.6.  The first was submitted by his mother, not by Mr. Galan, and to deny him the right to file such an application in his own name would be a violation of Due Process.

    [3] Particularly in light of Mr. Galan's refusal to sign the "Notice of Intent" to reinstate the prior deportation order, *see,* (A:1), these documents, and the previously filed N-600, should have been construed as the "written statement" which Mr. Galan was entitled to make, contesting the "Notice of Intent." (A:1).

2

According to documents subsequently received from INS, on May 18, 2001, Mr. Galan was presented with a "Notice of Intent/Decision to Reinstate Prior Order." (A:1) It advised him of his right to make a written or oral statement contesting the reinstatement. In the box provided for "Acknowledgment and Response," a check had been placed in the box marked "do not" wish to make a statement contesting this determination, and on the signature line, was the notation "Inmate Refused to Sign." (A:1). Moreover, because INS had actual notice that Mr. Galan was represented by counsel, (A:3), under 8 C.F.R. §292.5, the "Notice of Intent" should have been served on his attorney of record, rather than on him directly.

On May 21, 2001, Mr. Galan was physically deported from the Big Spring facility to Mexico. (A:2). It was subsequently learned from Mr. Galan's family that when he was asked to sign the notice at Big Spring, Texas, [4] he declined, explaining that he had an attorney, and did not wish to sign any papers without being allowed to first consult with his attorney, and that the official who had presented the papers then took them back, saying something to the effect that this was his right, and wishing him well. (A:4).

On May 27, 2001, the undersigned faxed letters to Mr. Lawson and Mr. Reynolds, and hand-delivered a copy to E.M. Trominski, the Harlingen INS District Director. (A:4). In response, she received, by fax, the "Notice of Intent," (A:1), and the January, 2001, denial of the N-600 (A:5). She was also told that when the decision

---

[4] If the dates on the "Notice of Intent" (A:1), are correct, it was prepared on May 17, 2001, and presented to Mr. Galan on May 18, 2001. There is no indication that Mr. Galan, or his attorney of record, were served with a copy at that time. Since the undersigned was telephonically advised on May 17, 2001, that Mr. Galan had been already transferred to Dallas, (A:3), the Notice must have been presented for his signature in Dallas. According to Mr. Galan, he was asked (and refused) to sign certain papers at Big Spring, Texas, on May 21, 2001, (A:4). It is unclear whether this was some other document, or whether the dates on (A:1) are incorrect.

3

According to documents subsequently received from INS, on May 18, 2001, Mr. Galan was presented with a "Notice of Intent/Decision to Reinstate Prior Order." (A:1) It advised him of his right to make a written or oral statement contesting the reinstatement. In the box provided for "Acknowledgment and Response," a check had been placed in the box marked "do not" wish to make a statement contesting this determination, and on the signature line, was the notation "Inmate Refused to Sign." (A:1). Moreover, because INS had actual notice that Mr. Galan was represented by counsel, (A:3), under 8 C.F.R. §292.5, the "Notice of Intent" should have been served on his attorney of record, rather than on him directly.

On May 21, 2001, Mr. Galan was physically deported from the Big Spring facility to Mexico. (A:2). It was subsequently learned from Mr. Galan's family that when he was asked to sign the notice at Big Spring, Texas, [4] he declined, explaining that he had an attorney, and did not wish to sign any papers without being allowed to first consult with his attorney, and that the official who had presented the papers then took them back, saying something to the effect that this was his right, and wishing him well. (A:4).

On May 27, 2001, the undersigned faxed letters to Mr. Lawson and Mr. Reynolds, and hand-delivered a copy to E.M. Trominski, the Harlingen INS District Director. (A:4). In response, she received, by fax, the "Notice of Intent," (A:1), and the January, 2001, denial of the N-600 (A:5). She was also told that when the decision

---

[4] If the dates on the "Notice of Intent" (A:1), are correct, it was prepared on May 17, 2001, and presented to Mr. Galan on May 18, 2001. There is no indication that Mr. Galan, or his attorney of record, were served with a copy at that time. Since the undersigned was telephonically advised on May 17, 2001, that Mr. Galan had been already transferred to Dallas, (A:3), the Notice must have been presented for his signature in Dallas. According to Mr. Galan, he was asked (and refused) to sign certain papers at Big Spring, Texas, on May 21, 2001, (A:4). It is unclear whether this was some other document, or whether the dates on (A:1) are incorrect.

was made to reinstate the deportation order, only the temporary INS file was in the hands of the decision-maker.

Now it appears that the permanent file is lost. INS has requested, and received, two extensions of time in which to locate it, so far, without success.   However, under 8 U.S.C. §1252(b)(4)(A), the instant petition must be decided on the basis of the "administrative record on which the order of removal is based."

## II.   OPPOSITION TO REQUESTED EXTENSION OF TIME

Here, the "administrative record on which the order of removal is based" was a temporary A-file.  The "permanent file" was not in the hands of Ponciano Guerra, Jr., the person who issued that order, purportedly on the basis of, *inter alia*, "the administrative file."

Under these circumstances, §1252(b)(4)(A) would require that Respondent certify to this Court the "temporary file," as being the one on which the order was based.   Notably, the implementing regulations, 8 C.F.R. §241.8, *assume* alienage, even though it is a jurisdictional fact, and establish no procedures for cases where, as here, alienage is disputed.  Petitioner will argue that in such a case, it was error for INS to reinstate the deportation order.

## III.   MOTION REQUESTING THAT RESPONDENT BE REQUIRED TO PRESENT TO THIS COURT THE TEMPORARY FILE WHICH WAS IN THE HANDS OF THE DECISION MAKER WHO SIGNED THE ORDER AT ISSUE HEREIN, AND TO CERTIFY THAT TEMPORARY FILE AS BEING THE "ADMINISTRATIVE RECORD ON WHICH THE ORDER OF REMOVAL IS BASED" WITHIN THE MEANING OF §1252(b)(4)(A)

Even if Respondent can eventually locate, and provide, the Petitioner's permanent file to this Court, it would be, at best, misleading, and at worst, simply inaccurate, for Respondent to certify that file as being the one "on which the order of removal is based."  INS' admission that said decision was made on the basis of a "temporary" file is corroborated by the fact that the permanent file cannot be located.   Since the "administrative record" on which the order was based was the temporary file,

4

Respondent should certify it as such. It should include a copy of the file jacket, which will show that it was a "temporary" file. (Such files are marked with a "T"). That it was a temporary file will also be shown by what it does **not** contain.

WHEREFORE, it is respectfully urged that, to the extent that said motion seeks additional time for the purpose of locating the "permanent" file relating to the Petitioner herein, Respondent's motion for a third extension of time be denied.

IT IS FURTHER URGED that an Order issue, requiring that Respondent certify, within a reasonable period of time, as the "administrative record on which the order of removal is based," within the meaning of 8 U.S.C. §1252(b)(4)(A), the administrative file which was in the hands of the decision-maker, to wit, Ponciano Guerra, Jr., at the time he made the decision to reinstate the prior order of deportation, and that said certified record include a copy of the file jacket, which will demonstrate whether it was a temporary, or the complete, permanent file of the Petitioner.

Respectfully Submitted,

Lisa S. Brodyaga
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class postage prepaid, to Heather Phillips, Attorney, Box 878, Ben Franklin Sta., Wash., D.C. 20004, on September 24, 2001.

5

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS

**FILED**

OCT 1 9 2001

CHARLES R. FULBRUGE III
CLERK

ENRIQUE GALAN,                                  )
                                                )
v.                                              )      No. 01-60461
                                                )
JOHN ASHCROFT, UNITED STATES                    )
     ATTORNEY GENERAL.                          )
_____ )

MOTION TO REMAND TO DISTRICT COURT TO DETERMINE PETITIONER'S CLAIM
OF UNITED STATES NATIONALITY, PURSUANT TO 8 U.S.C. §1252(b)(5)(B)

AND, IN THE ALTERNATIVE,

PETITIONER'S OBJECTION TO THE COMPOSITION OF THE ADMINISTRATIVE
RECORD AS FILED HEREIN; RENEWED MOTION THAT RESPONDENT BE REQUIRED
TO CERTIFY THAT PORTION OF THE RECORD WHICH WAS IN THE HANDS OF THE
DECISION-MAKER AT THE TIME THE DECISION WAS MADE TO REINSTATE HIS
PRIOR DEPORTATION ORDER,

AND MOTION TO SUSPEND BRIEFING SCHEDULE UNTIL THE MOTION TO REMAND,
AND/OR ISSUE OF THE COMPOSITION OF THE RECORD HAVE BEEN RESOLVED.

Petitioner, by and through the undersigned, respectfully files the
instant motion that the instant proceeding be transferred to the
United States District Court for the Southern District of Texas,
Brownsville Division, for a hearing on his claim that he is a
United States citizen, as provided in 8 U.S.C. §1252(b)(5).

In the alternative, Petitioner objects to the administrative record
as filed herein and renews his prior motion that Respondent should
be required to file, as the certified administrative record, the
"temporary" INS A-file which was actually in the hands of the
decision-maker at the time the decision was made to reinstate his
prior deportation order.

Further, Petitioner requests that the briefing schedule herein be
suspended until these issues have been resolved.  In support of
these requests, Petitioner would respectfully show as follows:

# I. THE FACTS, PROCEDURAL HISTORY, AND RECORD AS PRESENTLY COMPOSED
## A. THE FACTS AND PROCEDURAL HISTORY

On August 12, 1969, when Petitioner was thirteen years old, an application for Certificate of Citizenship, (form N-600), was filed by his mother on his behalf. Said application was denied on or about March 30, 1970. (A:5). [1] On November 2, 2000, through counsel, Mr. Galan filed an N-600 application in his own name and right. Under 8 C.F.R. §292.5, any correspondence relating thereto was required to be served on counsel, not Mr. Galan. Rather, the N-600 application was "rejected," [2] and returned directly to Mr. Galan, in care of his mother. Counsel was not even served with a copy of the rejection notice. (A:5-7).

On May 17, 2001, the undersigned sent, by fax, copies of her G-28 (which G-28 was filed with INS in Harlingen, Texas, on November 2, 2000), and of the filing receipt for Mr. Galan's N-600, also filed on November 2, 2000, to Mr. Lawson, the INS Deportation Officer in Big Spring, Texas. (R:5-8). Shortly thereafter, Mr. Lawson called the undersigned, and advised her that Mr. Galan had been moved to Dallas. *Id.* The undersigned then called Mr. Reynolds, INS General Counsel, in Dallas, Texas, explained the situation, and faxed the

---

[1] As in Petitioner's prior motion, the documents attached to the Petition for Review will be referred to, as numbered below, as "Exhibit (A:__)." (1) Notice of Intent/Decision to Reinstate Prior Order; (2) Notice of Release and Arrival; (3) letters dated May 17, 2001, to J.T. Lawson, and Jim Reynolds; (4) letter dated May 27, 2001 to J.T. Lawson, Jim Reynolds, and E.M. Trominski; (5) Letter from INS to Mr. Galan, denying the N-600, dated January 5, 2001; (6) a file stamped G-28, dated November 2, 2000; and (7) the filing receipt for the N-600, and the N-600, with supporting documents. The record as filed herein will be cited by page as (R:__).

[2] Mr. Galan will argue that it was improperly rejected, as it was not "submitted by the same individual" within the meaning of 8 C.F.R. §341.6. The first was submitted by his mother, not by Mr. Galan, and to deny him the right to file such an application in his own name would be a violation of Due Process.

same documents to him. *Id.* The cover letters advised both officers that Mr. Galan wished to pursue his claim to U.S. citizenship in removal proceedings. *Id.* Between May 17, 2001, and May 27, 2001, no communication was received from INS about the case. (A:4).

On or about May 18, 2001, Mr. Galan was presented with a "Notice of Intent/Decision to Reinstate Prior Order." (R:15) [3] It advised him of his right to make a written or oral statement contesting the reinstatement. In the box provided for "Acknowledgment and Response," a check had been placed in the box marked "do not" wish to make a statement contesting this determination, and on the signature line, was the notation "Inmate Refused to Sign." (R:15).

Given Petitioner's refusal to sign the renunciation of his right to make such a statement, the correspondence received by INS from counsel, demonstrating that he had filed an N-600, claiming United States citizenship, and wished to pursue that claim before an Immigration Judge, should have been construed as constituting the written statement he was entitled to make. Moreover, because INS had actual notice that Mr. Galan was represented by counsel, (R:5-8), under 8 C.F.R. §292.5, the "Notice of Intent" should have been served on his attorney of record, rather than on him directly.

Mr. Galan was thereafter bused from Big Spring to El Paso, and on May 21, 2001, at 10:20 p.m., he was physically deported to Mexico. (R:13). It was subsequently learned from Mr. Galan's family that when he was asked to sign the notice at Big Spring, Texas, he declined, explaining that he had an attorney, and did not wish to

---

[3] The Petitioner asserts that he was given this document to sign on or about May 21, 2001, at Big Spring, Texas. (R:3). Although the document itself does not state where it was executed, this information would be available to INS, as it was signed by two INS officials:   Maria E. Pulido, and Ponciano Guerra, Jr., IRP Director.  INS certainly has means of knowing where these officials were stationed during the period in question.

3

sign any papers without being allowed to first consult with his attorney, and that the official who had presented the papers then took them back, saying something to the effect that this was his right, and wishing him well. (A:4). [4]

On May 27, 2001, the undersigned faxed letters to Mr. Lawson and Mr. Reynolds, and sent a copy to E.M. Trominski, the Harlingen INS District Director. (R:3-9). In response, she received, (by fax from INS at Big Spring, Texas), the "Notice of Intent," (A:1), and the January, 2001, denial of the N-600 (A:5). [5] She was also told that when the decision was made to reinstate the deportation order, only the temporary INS file was in the hands of the decision-maker.

## B.   THE RECORD AS CURRENTLY COMPOSED

Now, after receiving three extensions of time in which to file the certified administrative record, INS has presented a rather eclectic assortment of documents. Notably, the record as presented contains no "certification" that it is properly constructed, which it clearly is not. Perhaps no INS official was willing to sign such a certification. This would be completely understandable.

The first document in the record is this Court's letter of June 12, 2001, serving Respondent with the Petition for Review. (R:1-2). It

---

[4]   If the dates on the "Notice of Intent" and the proposed affidavit, (R:15-16), are correct, they were prepared May 17, 2001, and presented to Mr. Galan for his signature on May 18, 2001. Since the undersigned was telephonically advised on May 17, 2001, that Mr. Galan had been already transferred to Dallas, (R:5), he would have been in Dallas on May 18, 2001. According to Mr. Galan, he was asked (and refused) to sign certain papers at Big Spring, on May 21, 2001, (A:4). It is unclear whether these were different documents, or whether the dates on (R:15) and (R:16) are incorrect. However, this ambiguity has little if any significance herein.

[5]   Significantly, this document is not included in the record, even though the faxed copy submitted by Petitioner clearly shows that it was sent from "US INS Big Spring" on May 31, 2001.

is followed by the copy of the May 27, 2001 letter from counsel
(and supporting documents), which was served on Mr. Trominski, in
Harlingen, Texas. (R:3-9). Next is a copy of one of the affidavits
which had been attached to the N-600 filed in October, 2000.
(R:10-11). It is unknown how this document reached the file.

Next are the documents authorizing Mr. Galan's deportation in May,
2001, those which demonstrate that he was deported, and an
affidavit prepared for his signature on May 17, 2001, (which
affidavit he refused to sign). (R:12-16). The record also
contains Mr. Galan's 1990 deportation order, (R:32), and two signed
versions of the decision to reinstate that order. The first was
dated and signed on March 26, 2001, by Jorge Eisermann, Jr.,
Assistant District Director Investigations [in Dallas, Texas].
(R:51). Even the line for the "signature of the alien" is dated
March 26, 2001, although that line was unsigned. Someone
apparently noticed the defect, and a second decision was prepared.
It was typed on May 17, 2001, and apparently presented to Mr. Galan
on May 18, 2001. He refused to sign it. (R:15).

Adjacent to the March 26, 2001 version of the reinstatement order
is an undated, and unsigned document which purports to be an
affidavit from Mr. Galan, also prepared in Dallas, Texas. It
certifies that the affiant has been advised of certain rights, and
notes that it must be made voluntarily. Thereafter, it contains an
averment that the affiant is willing to make such a statement, and
continues as follows (emphasis in original) (R:50):

> **Being duly sworn, I make the following statement:**
> My true and full name is Enrique GALAN-Gonzalez and I was
> born on 12/22/55 in Estacion Ramirez, Tamps., Mexico. I
> last entered the United States on or about 04/30/90 near
> Progreso, Tx. without being inspected by an immigration
> officer. I was previously deported on 04/10/90 from
> Brownsville, TX to Mexico. I have no fear of returning
> to Mexico and wish to be returned as soon as possible.
> I have nothing else to say.

5

Except for the averment that he wishes to be returned to Mexico as soon as possible, and has "nothing else to say," this affidavit is virtually identical to the one prepared on May 17, 2001, and presented to him by Maria Pulido on (or about) May 18, 2001. (R:16). It would appear that INS already knew exactly what they wanted Mr. Galan to say in his affidavit, but that he had other ideas. As a result, no signed affidavit was obtained.

The next document in the record is the I-213, record of deportable alien, also created on March 26, 2001, at Dallas, Texas. (R:52). The form has a space for (and contains) the number and nationality of his minor children. It also calls for the name and nationality of his parents and spouse. While it has all three names, and the nationality of his wife, there is no mention of the nationality of his parents. Below that is an I-213 apparently created in 1993, which incorrectly lists his mother as a lawful permanent resident (rather than a U.S. citizen) (R:53).

The record as filed also contains a document which was created *after* Mr. Galan was deported, to wit, the letter of the undersigned, with attachments, that was sent to Mr. Trominski, in Harlingen, Texas, on May 27, 2001, (R:3-9). The remainder of the record consists solely of documents relating to Mr. Galan's criminal record, and his fingerprints.

Even more significant is what the record does **not** contain. There are no documents relating to the N-600 application filed by Mr. Galan's mother in 1969. Even more surprising is the absence of the letter denying the N-600 filed in October 2000, which denial letter references the 1969 application, and was faxed to the undersigned from INS at Big Spring, Texas, on May 31, 2001. (A:5).

Also missing are the copies of the documents (including counsel's G-28, notice of appearance as attorney of record) which were faxed

6

to INS at both at Big Spring, Texas, and Dallas, Texas, on May 17, 2001, and May 27, 2001.  Perhaps most puzzling of all, while the record contains one of the affidavits which was submitted in support of the recent N-600, (R:10-11), it includes neither the N-600 form itself, nor the remainder of the supporting documents.  In fact, the only trace of that application found in the record is the reference thereto in the letter sent by counsel to Mr. Trominski in Harlingen, on May 27, 2001, supported by the filing receipt. (R:8).

## II.  MOTION TO REMAND

Mr. Galan first requests that the instant case be remanded to the United States District Court for the Southern District of Texas, Brownsville Division, pursuant to 8 U.S.C. §1252(b)(5)(B).  As provided therein:

> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of title 28, United States Code.

It is submitted that such a "genuine issue of material fact" is presented herein.  Notably, that section does not limit this determination to the "record of proceedings."  To the contrary, 8 U.S.C. §1252(b)(4) provides as follows (emphasis added):

> (4)  Scope and standard for review.  **Except as provided in paragraph (5)(B)** - -
> > (A) the court of appeals shall decide the petition only on the administrative record on which the order of removal is based,
> > (B) the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . .

7

The N-600 application and supporting documents create a *prima facie* case that Mr. Galan is a national and citizen of United States. 8 U.S.C. §1401(g), as in effect at the time of his birth, conferred both nationality and citizenship on persons born abroad, one of whose parents was a foreign national, and the other, a United States citizen, if the citizen parent had, prior to the applicant's birth, resided in the United States for a total of ten years, five of which were after attaining the age of fourteen years.

Mr. Galan's N-600 application avers that his United States citizen mother resided in the United States for approximately twelve years before his birth, to wit, from her birth in 1929 until sometime in 1930, again from 1938 to 1947, and, after a three month absence, from 1948 to 1952, although she was "in and out" during 1951 and 1952. In support thereof, he submitted her birth and baptismal records, Social Security and unemployment cards, her Social Security printout, a union card, his own birth certificate, his parents' marriage certificate, and several affidavits, attesting to his mother's presence in the United States. Certainly, this evidence presents a "genuine issue material fact about the petitioner's nationality," within the meaning of §1252(b)(5)(B).

**III. IN THE ALTERNATIVE, MR. GALAN OBJECTS TO THE COMPOSITION OF THE ADMINISTRATIVE RECORD, AND REQUESTS THAT RESPONDENT BE REQUIRED TO FILE, AND *CERTIFY*, THE "TEMPORARY" INS A-FILE WHICH WAS ACTUALLY IN THE HANDS OF THE DECISION-MAKER, PONCIANO GUERRA, JR., WHEN THE DEPORTATION ORDER WAS REINSTATED, IF IT CAN BE RECONSTRUCTED.**

Should this Court deny Mr. Galan's motion to remand, under 8 U.S.C. §1252(b)(4)(A), the instant petition must be decided on the basis of the "administrative record on which the order of removal is based." It is clear that what has been filed does not meet that criterion. And, as previously noted, no INS official has even attempted to certify that it does. The only person who would conceivably be in a position to make such a certification, however,

would be the official who signed the reinstatement order, Ponciano Guerra, Jr., the IRP Director. (R:15).

Here, the "administrative record on which the order of removal is based" was a temporary A-file. The "permanent file" was not in the hands of Mr. Guerra, who issued that order, purportedly on the basis of, inter alia, "the administrative file." Under these circumstances, §1252(b)(4)(A) would require that Respondent certify to this Court the "temporary file," as being the one on which the order was based.

INS' prior admission that said decision was made on the basis of a "temporary" file is corroborated, inter alia, by the documents which are missing from the record. Since the "administrative record" on which the order was based was the temporary file, Respondent should certify it as such. It should include a copy of the file jacket, which will further demonstrate that it was a "temporary" file. (Such files are marked with a "T").

However, it is not clear to the undersigned that it would be possible to reconstruct the temporary A-file as it was before Mr. Guerra when he made his decision to reinstate the deportation order. Almost six months have passed, and it is doubtful that he would have an independent recollection at this time as to what was, and what was not, before him on May 18, 2001. If not, (or even if it were possible), it is submitted that the Respondent should confess error, in that it is clear that the decision was made on the basis of an incomplete record. [6]

---

[6] Notably, the implementing regulations, 8 C.F.R. §241.8, (and the "Decision, Order, and Officer's Certification" which Mr. Ponciano signed), assume alienage, even though it is a jurisdictional fact. Nor do the regulations establish any procedures for cases where, as here, this jurisdictional fact is disputed. Petitioner will argue that in such a case, it was error for INS to reinstate the deportation order.

## IV. REQUEST TO SUSPEND BRIEFING SCHEDULE

Finally, Petitioner requests that the briefing schedule set herein be suspended, until such time as the Court has ruled upon Mr. Galan's motions, first to remand, and in the alternative, to correct the composition of the administrative record.

## V. CONCLUSION

WHEREFORE, it is respectfully urged that the instant case be remanded to the United States District Court for the Southern District of Texas, Brownsville Division, where Petitioner has his permanent residence, for a *de novo* hearing on his claim that he is a national of the United States.

In the alternative, it is urged that an Order issue, requiring that Respondent certify, within a reasonable period of time, as the "administrative record on which the order of removal is based," within the meaning of 8 U.S.C. §1252(b)(4)(A), the administrative file which was in the hands of the decision-maker, to wit, Ponciano Guerra, Jr., at the time he made the decision to reinstate the prior order of deportation, and that said certified record include a copy of the file jacket, which will further demonstrate that it was only a temporary file.

And it is further urged that the briefing schedule herein be suspended until such time as said motions are decided, and, if appropriate, until forty days after Respondent has filed an appropriate, and properly certified, administrative record.

Respectfully Submitted,

Lisa S. Brodyaga
REFUGIO DEL RIO GRANDE

10

17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class postage prepaid, to Heather Phillips, Attorney, Box 878, Ben Franklin Sta., Wash., D.C. 20004, on October 15, 2001.

11

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**

OCT 1 9 2001

CHARLES R. FULBRUGE III
CLERK

ENRIQUE GALAN,                    )
                                  )
v.                                )        No. 01-60461
                                  )
JOHN ASHCROFT, UNITED STATES      )
     ATTORNEY GENERAL.            )
_____ )

**CERTIFICATE OF CONSULTATION AND NOTICE OF NON-OPPOSITION TO
MOTION TO SUSPEND BRIEFING SCHEDULE UNTIL THE MOTION TO REMAND,
AND/OR ISSUE OF THE COMPOSITION OF THE RECORD HAVE BEEN RESOLVED.**

Petitioner hereby advises the Court that on October 15, 2001, the
undersigned spoke with Heather Phillips, attorney for Respondent,
about the motion to suspend the briefing schedule herein until such
time as the motions to remand, and/or correct the composition of
the record have been resolved.   Ms. Phillips stated that the
Respondent is not opposed to said motion.

Respectfully Submitted,

Lisa S. Brodyaga
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class
postage prepaid, to Heather Phillips, Attorney, Box 878, Ben
Franklin Sta., Wash., D.C. 20004, on October 15, 2001.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | |
|---|---|
| Enrique Galan-Gonzalez,<br><br>           Petitioner,<br><br>           v.<br><br>JOHN ASHCROFT, United States<br>Attorney General,<br><br>           Respondent. | No. 01-60461<br>Agency No. A30 379 730<br><br>RESPONDENT'S RESPONSE TO<br>PETITIONER'S MOTION OF OCTOBER<br>16, 2001, AND MOTION TO TRANSFER<br>PROCEEDINGS TO THE DISTRICT<br>COURT PURSUANT TO INA §<br>242(b)(5)(B) FOR TREATMENT OF<br>PETITIONER'S NATIONALITY CLAIM[1/] |

     The respondent hereby responds to Petitioner's Motion of

October 16, 2001, and moves the Court to transfer this case to

the United States District Court for the Southern District of

Texas, Brownsville Division, Texas, pursuant to INA §

242(b)(5)(B), 8 U.S.C. § 1252(b)(5)(B).

U.S. COURT OF APPEALS
**FILED**
NOV 2 2001
CHARLES R. FULBRUGE III
CLERK

### BACKGROUND

     Petitioner Enrique Galan-Gonzalez ("Galan") was born in

Mexico in 1955.  Administrative Record ("A.R.") 19 (noting

"Defendant's date of birth").  He entered the United States at

Hidalgo, Texas on or about October 26, 1970, as a long term

permanent resident.  Exhibit 1, Order to Show Cause dated June 2,

1989.  On June 13, 1988, Galan was convicted in the 105th

District Court, in and for Kleberg County, Texas, of possession

---

[1/] Petitioner's October 16, 2001 Motion requests that the Court
"remand" this case to the District Court of the Southern District
of Texas.  Pursuant to INA § 242(b)(5)(B), 8 U.S.C. §
1252(b)(5)(B), however, the proper course of action is for the
Court to transfer the proceeding to district court.

of marijuana.  Id.; Exhibit 2, Conviction Records at 1.  On June

2, 1989, the INS issued an Order to Show Cause and Notice of

Hearing charging Galan with deportability pursuant to former INA

§ 241(a)(11), 8 U.S.C. § 1251(a)(11)(1988), as an alien convicted

of a controlled substance violation.  Exh. 1.  On January 26,

1990, an immigration judge found him deportable as charged.  Exh.

3, Immigration Judge Decision.

Galan was deported from the United States on April 10, 1990.

A.R. 15.  He illegally reentered the United States sometime in

April of 1990, at or near Brownsville, Texas.  Id.  On April 5,

1991, Galan pleaded guilty to conspiracy to possess with intent

to distribute in excess of 5 kilos of cocaine.  A.R. 19.  For

this crime he was sentenced to a term of imprisonment of 144

months.  A.R. 2.  On May 18, 2001, the INS removed Galan pursuant

to a reinstatement order issued under INA § 241(a)(5), 8 U.S.C. §

1231(a)(5), based on his prior removal and illegal reentry in

April of 1990.  A.R. 12-15.

## JURISDICTION

This Court has jurisdiction over final orders of removal

such as Galan's reinstatement order.  See Castro-Cortez, 239 F.3d

1037, 1043-44 (9th Cir. 2001) ("[W]e conclude that § 242(a)(1),

which authorizes review of "order[s] of removal," authorizes

review of reinstatement orders."); see also Velazquez-Gabriel v.

Crocetti, 263 F.3d 102 (4th Cir. 2001).  The Court may not,

however, review Galan's prior order of removal underlying the May

2

18, 2001 reinstatement order.  See INA § 241(a)(5), 8 U.S.C. §

1231(a)(5).[2/]  Moreover, notwithstanding the bar to review

presented by INA § 241(a)(5), the Court's jurisdiction over

challenges to removal orders by certain classes of criminal

aliens, including those, such as Galan, convicted of controlled

substance violations under INA § 237(a)(2)(B), 8 U.S.C §

1227(a)(2)(B), is restricted.  INA § 242(a)(2)(C), 8 U.S.C.

§ 1252(a)(2)(C) (West 2001).[3/]  See  Calcano-Martinez v. INS, 121

S. Ct. 2268, 2270 (Jun. 25, 2001).  However, even in the case of

removal orders of criminal aliens, the Court has jurisdiction to

determine jurisdiction.  Balogun v. Ashcroft, No. 00-60698 (5th

Cir. October 31, 2001); Lopez-Elias v. Reno, 209 F.3d 788, 791

(5th Cir. 2000), cert. denied 121 S. Ct. 757 (2001).

Accordingly, the Court, can review whether Galan is (1) an alien,

(2) who is removable, (3) by reason of having committed a

---

[2/]  That provision states:

> If the Attorney General finds that an alien has
> reentered the United States illegally after
> having been removed or having departed
> voluntarily, under an order of removal, the prior
> order of removal is reinstated from its original
> date and is not subject to being reopened or
> reviewed, the alien is not eligible and may not
> apply for any relief under this chapter, and the
> alien shall be removed under the prior order at
> any time after the reentry.

(emphasis added)

[3/]  INA § 237(a)(2)(B) is the successor provision to former INA §
241(a)(11), 8 U.S.C. § 1251(a)(11)(1988), the provision under
which Galan was charged with deportability.  Exh. 1.

criminal offense covered in INA § 237(a)(2)(B).  Pertinently, in

this case, Galan claims that he is not an alien, but a citizen of

the United States.  Thus, also relevant here is INA § 242(b)(5),

8 U.S.C. § 1252(b)(5), which guides the Court in its treatment of

nationality claims.[5/]

## GALAN'S CITIZENSHIP CLAIM

According to Galan's Application for Certificate of

Citizenship, his mother, Cleofas Galan, is a United States

citizen who was born in Falfurrias, Texas, in 1929.  See

Petitioner's N-600 Form, attached to Petition for Review.  Along

with his N-600, Galan submitted several supporting documents,

---

[5/]   INA § 242(b), 8 U.S.C. § 1252(b)(5), reads:

TREATMENT OF NATIONALITY CLAIMS.
(A) COURT DETERMINATION IF NO ISSUE OF FACT.  If
the petitioner claims to be a national of the
United States and the court of appeals finds from
the pleadings and affidavits that no genuine issue
of  material  fact  about  the  petitioner's
nationality is presented, the court shall decide
the nationality claim.
(B) TRANSFER IF ISSUE OF FACT.  If the petitioner
claims to be a national of the United States and
the court of appeals finds that a genuine issue of
material fact about the petitioner's nationality
is  presented,  the  court  shall  transfer  the
proceeding to the district court of the United
States for the judicial district in which the
petitioner resides for a new hearing on the
nationality claim and a decision on that claim as
if an action had been brought in the district
court under section 2201 of title 28, United
States Code.
(C) LIMITATION ON DETERMINATION.  The petitioner
may have such nationality claim decided only as
provided in this paragraph.

id., that appear to create a genuine issue of material fact respecting the length of time his mother resided in the United States prior to his birth.[5]  In determining whether a genuine issue of material fact exists, traditional summary judgment principles apply.  Thus, "a court of appeals cannot refuse to allow a de novo review of a citizenship claim if the evidence presented in support of the claim would be sufficient to entitle a litigant to trial were such evidence presented in opposition to a motion for summary judgment."  Agosto v. INS, 436 U.S. 748, 756 (1978).  As such, pursuant to INA § 242(b)(5), 8 U.S.C. § 1252(b)(5)(B), the Court should transfer this proceeding to the Southern District of Texas, Brownsville Division, Texas.

---

[5]  Under the law in effect at the time of Galan's birth, a person born outside the geographical limits of the United States of one citizen parent and one alien parent was deemed a United States citizen if the citizen parent had been physically present in the United States for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years.  INA § 301(a)(7), 8 U.S.C. § 1401(a)(7) (1952) (redesignated in 1978 as § 1401(g)).

## CONCLUSION

For the foregoing reasons, the Court should transfer this proceeding to the United States District Court for the Southern District of Texas, Brownsville Division.  If that Court determines that Galan is not a citizen, but an alien, the District Court should transfer the case back to the Court of Appeals for disposition of the petition for review.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director

HEATHER R. PHILLIPS
Attorney
Office of Immigration Litigation
Civil Division
Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
(202) 616-9303

Date:  November 1, 2001     Attorneys for Respondent

# **EXHIBIT 1**

# Order to Show Cause of June 2, 1989

Case 1:01-cv-00209   Document 1   Filed in TXSD on 12/19/2001   Page 86 of 104



# UNITED STATES DEPARTMENT OF JUSTICE
### Immigration and Naturalization Service

## ORDER TO SHOW CAUSE and NOTICE OF HEARING

In Deportation Proceedings under Section 242 of the Immigration and Nationality Act

UNITED STATES OF AMERICA:                    File No. **A30 379 730**

In the Matter of  **GALAN-GONZALEZ, ENRIQUE**        ——              Respondent.

**P.O.BOX 1082, Progreso, Texas 78579**
Address (number, street, city, state, and ZIP code)

UPON inquiry conducted by the Immigration and Naturalization Service, it is alleged that:

1. You are not a citizen or national of the United States;
2. You are a native of ___**MEXICO**___
   and a citizen of ___**MEXICO**___,
3. You entered the United States at ___**HIDALGO, TEXAS**___ on
   or about ___**October 26, 1970;**___
                   (date)
4. **You were then admitted as a lawful permanent resident alien.**

5. **You were on June 13, 1988 convicted in the 105th District Court,
   in and, for Kleberg County, Texas of POSSESSION OF MARIHUANA.**

AND on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:

**Section 241(a)(11) of the Immigration and Nationality Act, in that, you
at any time have been convicted of a violation of, or a conspiracy to
violate, any law or regulation of a State, the United States, or a
foreign country relating to a controlled substance (as defined in
Section 101 of the Controlled Substance Act, 21 U.S.C. 802) to wit,
POSSESSION OF MARIHUANA.**

WHEREFORE, YOU ARE ORDERED to appear for hearing before an Immigration Judge of the Immigration and Naturalization Service of the United States Department of Justice at

on___**TO BE SET**___at_____m, and show cause why you should not
be deported from the United States on the charge(s) set forth above.

Dated:    June 2,1989
          8:40AM

                              _Cecilio L Ruiz Jr._
                              (signature and title of issuing officer)

                              **Harlingen, Texas**
                              (City and State)
                              **Cecilio L. Ruiz, Jr.**
                              **Asst. Dist. Dir. for Det. and Dep.**

                                        Exh #1
                                        10-23-89

Form I-221  (Rev. 7-1-73)Y

                                                         (over)

# EXHIBIT 2

# Conviction Records

Case 1:01-cv-00209  Document 1  Filed in TXSD on 12/19/2001  Page 88 of 104

NO. 9331  P. 6 11

Mag.Ct. No.:

Bond: $15,000.00    By:

88-CRF-060

THE STATE OF TEXAS VS. ENRIQUE GONZALEZ GALAN

CHARGE:  SECOND DEGREE FELONY UNLAWFUL POSSESSION OF MARIHUANA

COURT:  105TH JUDICIAL DISTRICT

**********************************************

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:

The grand jury of Kleberg County, Texas, duly organized as such at the April—September Term A.D., 1988, of the 105th Judicial District Court of Kleberg County, in that Court at that term, do present that

defendant ENRIQUE GONZALEZ GALAN

on or about the 11TH day of April, 1988, in Kenedy County, Texas, did then and there knowingly and intentionally possess a usable quantity of marihuana in an amount of fifty pounds or less but more than five pounds

against the peace and dignity of the State.

FOREMAN OF THE GRAND JURY

# EXHIBIT 3

# Immigration Judge Decision

JUN. 20. 2001 1:53PM   USTONS DAL DD&P GECARTMENT OF JUSTICI          NO. 9331   P. 2 11

JTIVE OFFICE FOR IMMIGRATION
OFFICE OF THE IMMIGRATION JI
201 E. JACKSON
HARLINGEN, TEXAS 78550

IN THE MATTER OF:                    )
                                     )   FILE NO. A 30 372 730
RIQUE GALAN-GONZALES                 )
IN DEPORTATION PROCEEDINGS           )   DATE: JAN. 16 1990
                                     )
TO: Mauro Barreiro                       District Counsel
    3525 N 10th                          U.S. Immigration & Natz. Service
    McAllen, TX 78501                     2102 Teere Ave
                                          Harlingen Tx 78550

INDICIA OF ORAL DECISION OF IMMIGRATION JUDGE

This is a summary of the oral decision entered on JAN 16 1990 solely for
the convenience of the parties. If case is appealed, the oral decision will be
edited and become the official opinion in this case.
___ Respondent was granted relief under sec. 212(c) as long-time resident.

___ Respondent was granted suspension of deportation under sec. 244(a).

___ Respondent was granted asylum/withholding of deportation -sec. 208 & 243(h).

___ Respondent was granted voluntary departure on or before _____ 19___,
with an alternate order of deportation to _____ or _____.

___ Respondent was granted voluntary departure under safeguards to _____,
19___, provided that if Respondent is released from custody by that date,
voluntary departure is revised to _____ ,19___.

___ Respondent's application/request for sec. 241(f) was GRANTED.

___ Respondent's application for _____ was GRANTED.

___ The Proceedings were terminated.

✓ Respondent's application for 212(c) relief was DENIED.

___ Respondent's application for 244(a) suspension of deportation was DENIED

___ Respondent's application for 208/243(h) asylum/withholding of deportation
was DENIED.

___ Respondent's application for 241(f) relief was DENIED.

___ Respondent's application for _____ was DENIED,

___ Respondent's application for voluntary departure was DENIED, and Respondent
was ordered deported to _____ or _____.

✓ OTHER Respondent was ordered deported to
MEXICO

✓ The Service/Respondent reserved appeal;  I-290 due JAN 26 ,19 90

GREGORY Z. MEYERSON
Immigration Judge

# CERTIFICATE OF SERVICE

I hereby certify that one copy of the foregoing **RESPONDENT'S RESPONSE TO PETITIONER'S MOTION OF OCTOBER 16, 2001, AND MOTION TO TRANSFER PROCEEDINGS TO THE DISTRICT COURT PURSUANT TO INA §242(b)(5)(B) FOR TREATMENT OF PETITIONER'S NATIONALITY CLAIM** was served on counsel for the petitioner by facsimile and Federal Express mail service on November 1, 2001, addressed to:

Lisa Brodyaga, Esquire
17891 Landrum Park Road
San Benito, Texas 78586
Tel: (956) 421-3226
Fax: (956) 421-3423

HEATHER R. PHILLIPS, Attorney

l WL 1285228
F.3d ---
e as: 2001 WL 1285228 (1st Cir.(R.I.)))
ly the Westlaw citation is currently available.

United States Court of Appeals,
First Circuit.

Cesar BATISTA, Petitioner,
v.
John ASHCROFT, Attorney General of the United States, Respondent.

**No. 00-2525.**

Heard Aug. 2, 2001.
Decided Oct. 29, 2001.

Alien petitioned for review of a reinstated final order of removal by the
mmigration and Naturalization Service (INS). The Court of Appeals, Lipez,
'ircuit Judge, held that: (1) it was appropriate for court to look for a genuine
.ssue of material fact as to citizenship without regard to whether such
materials were part of the administrative record, and (2) alien's father's
Dominican Republic "divorce sentence" document and affidavit raised a genuine
.ssue of material fact as to whether alien's parents legally separated and
whether his father was awarded sole custody of him prior to alien's eighteenth
birthday so as to warrant evidentiary hearing on alien's claim of citizenship
based on derivative citizenship theory.

Transferred to the district court.

[1] **Aliens** ☞0

24k0  k.

Restrictions on court's authority to review removal orders based on an alien's
aggravated felony conviction do not apply when the alien makes a claim of
citizenship. 8 U.S.C. § 1252(a)(2)(C).

[2] **Federal Courts** ☞0
170Bk0  k.

Because alien filed his habeas petition with the district court within the time
permitted for filing a petition for review of his removal order in Court of
Appeals, district court's transfer of alien's petition was proper under statute
authorizing transfer of action or appeal to a court in which the action or
appeal could have been brought at the time it was filed or noticed. 28 U.S.C. § 1631.

[3] **Aliens** ☞0

Copr. © West 2001 No Claim to Orig. U.S Govt Works

:0 k.

. reviewing the "pleadings and affidavits" for material facts in dispute ufficient to warrant an evidentiary hearing on alien's claim of citizenship in petition for review, it is appropriate for court to look for a genuine issue : material fact as to citizenship without regard to whether such materials are urt of the administrative record. 8 U.S.C. § 1252(b)(5).

**Aliens** ⚖0

k0 k.

respondent at a deportation proceeding involving a claim of citizenship has an utomatic right to have new evidence considered on appeal, regardless of the eason for failure to proffer it earlier.

i] **Aliens** ⚖0

4k0 k.

un alien may acquire citizenship by birth only as provided by Acts of Congress.

6] **Aliens** ⚖0

:4k0 k.

Alien's father's Dominican Republic "divorce sentence" document and affidavit raised a genuine issue of material fact as to whether alien's parents legally separated and whether his father was awarded sole custody of him prior to alien's eighteenth birthday so as to warrant evidentiary hearing on alien's claim of citizenship based on derivative citizenship theory. 8 U.S.C. § 1432; 8 U.S.C. § 1252(b)(5).

PETITION FOR REVIEW OF A REMOVAL ORDER, PURSUANT TO AN ORDER OF TRANSFER ISSUED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge]

John H. Ruginski, Jr. for petitioner.

Thankful Vanderstar, with whom Stuart E. Schiffer, Acting Assistant Attorney General, Terri J. Scadron, Senior Litigation Counsel, and Brenda M. O'Malley, Trial Attorney, United States Department of Justice, were on brief, for respondent.

Before Boudin, Chief Judge, and Selya and Lipez, Circuit Judges.

LIPEZ, Circuit Judge.

*1 Cesar Batista-Baez ("Batista" or "Cesar Batista") petitions for review of a reinstated final order of removal by the Immigration and Naturalization Service ("INS"). Although Batista concedes that he is removable based on a drug trafficking conviction, he contends that he is entitled to relief from removal because his father, a naturalized citizen, was his custodial parent, and hence he is a derived United States citizen. We find that there is a genuine issue of

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

terial fact regarding Cesar Batista's nationality and transfer this case to e district court for a new hearing on the matter.

## I.

The following facts are not disputed. Cesar Batista was born in the Dominican Republic on September 14, 1977. On October 21, 1983, at the age of six, he was admitted as an immigrant to the United States, where his parents then lived. On May 5, 1997, Batista was convicted in Rhode Island for manufacturing and delivering heroin, an "aggravated felony" under current immigration law. *See* 8 S.C. § 1101(a)(43)(B). On July 14, 1997, the INS instituted removal proceedings against Batista based on this aggravated felony conviction. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 S.C. § 1227(a)(2)(B)(i). [FN1]

On August 13, 1997, Batista admitted the charges and conceded that he was removable. In September 1997, Batista filed a motion to terminate removal proceedings, claiming that he was a United States citizen. Batista said that his father, Julio Batista, became a naturalized United States citizen on June 16, 1982, that he himself became a legal permanent United States resident in October 1983 at the age of six, and that his parents legally separated on January 12, 1982. In support of his motion to terminate, Batista submitted an opinion from a lawyer in the Dominican Republic on the obligations of parents under the country's divorce laws, a copy of his father's naturalization certificate, and a copy of his mother's application for naturalization. However, Julio Batista's naturalization certificate, dated June 16, 1982, indicates his marital status as "married", not separated, and similarly, Minerva Batista's naturalization application, dated February 25, 1997, also lists her marital status as "married."

Batista also submitted a copy and a translation of a Dominican marriage certificate stating that his parents were married on August 13, 1977, and a copy and a translation of a document captioned "Dominican Republic Certification." This document contains Minerva Batista's declaration that she is "separated from" her "legitimate husband," Julio Batista, and that "at the moment of separation," she "gave the custody of [her] son, CESAR ARMANDO BATISTA, to his legitimate father, JULIO CESAR BATISTA PATRICIO." The document states that "[t]he present declaration is made under oath.... In the City of San Domingo, National District, Capital of the Dominican Republic, at 12 days of the month of January, 1982." The certification itself is dated August 3, 1997, and the translation is dated August 29, 1997.

On November 12, 1997, an immigration judge denied Batista's motion to terminate removal, found him removable based on his drug trafficking conviction, and ordered that Batista be removed to the Dominican Republic. Batista did not appeal the immigration judge's decision to the Board of Immigration Appeals ("BIA"). On November 26, 1997, the INS deported Batista to the Dominican Republic.

**\*2** Batista subsequently reentered the United States. The INS apprehended and detained him on October 15, 1998, in Philadelphia, Pennsylvania, and served him with a notice of intent to reinstate the 1997 removal order. [FN2] Batista declined to make a statement contesting the reinstatement. On October 16, 1998, the INS reinstated the 1997 removal order pursuant to 8 U.S.C. § 1231(a)(5). [FN3]

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

On April 8, 1999, Batista applied for citizenship to the INS District Director in Philadelphia, claiming that he had derived citizenship through his father under 8 U.S.C. § 1432(a). The statute provides, *inter alia,* that a child of alien parents born outside the United States may become a citizen of the United States if "the parent having legal custody of the child when there has been a legal separation of the parents" is naturalized; "[s]uch naturalization takes place while such child is under the age of eighteen years;" and "[s]uch child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent ... or thereafter begins to reside permanently in the United States while under the age of eighteen years." 8 U.S.C. § 1432. In his citizenship application Batista did not supplement the evidence that he presented in support of his earlier motion to terminate removal.

On April 12, 1999, the INS Acting Director in Philadelphia denied Batista's application. The Director said that Batista presented no evidence in support of his claim that his parents "obtained a divorce or a legal separation" and noted presumably to undermine such claim) that his father's 1982 naturalization certificate and his mother's 1997 naturalization application indicated that each was married, and that his mother's 1997 naturalization application additionally identified her husband as Julio C. Batista.

Although the Director considered the document containing a declaration by Batista's mother that his father secured legal custody of Batista upon their separation, he noted that the document was certified August 3, 1997, and further said that "[t]estimony presented to a notary public and certified in public record does not in itself constitute a legal determination on separation, divorce, and custody of minor children." The Director found that the available evidence did not show that Batista's parents obtained a legal separation, or that his father took legal custody of him before he reached the age of eighteen, as required by § 1432(a).

Batista did not appeal the denial of his citizenship claim to the Administrative Appeals Unit of the INS. On May 13, 1999, he was removed from the United States for the second time. Batista again reentered the United States, and on August 26, 2000, the Rhode Island state police arrested him for driving a car with a counterfeit inspection sticker. On August 30, 2000, the INS served Batista with a notice of intent to reinstate the 1997 removal order. Batista declined to make a statement contesting the reinstatement determination. The INS ordered Batista removed.

On September 25, 2000, Batista filed a habeas petition in the United States District Court for the District of Rhode Island challenging reinstatement of the 1997 removal order on the ground that he was a derived citizen under § 1432. Batista submitted no documents in support of his petition in addition to those already in the administrative record. On November 21, 2000, the district court transferred Batista's petition to this court pursuant to 28 U.S.C. § 1631.

**\*3** Before us, Batista continues to argue that he is a derived United States citizen under § 1432 because his father became a naturalized citizen before Batista was eighteen and took sole legal custody of him after his parents' divorce. In support of his citizenship claim, Batista submitted to us two

Copr. © West 2001 No Claim to Orig. U. S. Govt. Works

Case 1:01-cv-00209   Document 1   Filed in TXSD on 12/19/2001   Page 96 of 104

ocuments that were not part of the administrative record upon which the 1997
emoval order is based: a Dominican "Divorce Sentence" document and an affidavit
rom his father. In resolving this appeal, we must decide whether we can
onsider these two documents.

## II.

### A. *Jurisdiction*

[1] Although Congress recently restricted our authority to review removal orders
ased on an alien's aggravated felony conviction, *see* 8 U.S.C. § 1252(a)(2)(C) (Supp. II 1996),
hose restrictions do not apply when the alien makes a claim of citizenship.
erro v. Reno, 217 F.3d 1, 3 (1st Cir.2000). As the government concedes, when a citizenship claim
as been made, we have jurisdiction, pursuant to 8 U.S.C. § 1252(b)(5)(A) and (B) (Supp. II 1996),
o determine whether there is a "genuine issue of material fact" as to the
itizenship claim requiring transfer to the district court for necessary fact
inding.

[2] The same statutory scheme provides that an alien seeking judicial review of
. reinstated removal order must file a petition for review in this court within
0 days of the date of the reinstatement of the removal order. *See* 8 U.S.C. §
252(b)(1). Rather than following this procedure, however, Batista filed a habeas
etition with the district court within the permitted 30-day time period. The
istrict court then transferred the petition to us pursuant to 28 U.S.C. § 1631, which
rovides that when a civil action is filed in a court "and that court finds that
here is want of jurisdiction, the court shall, if it is in the interest of
ustice, transfer such action or appeal to any other such court in which the
ction or appeal could have been brought at the time it was filed or noticed."
Because Batista filed his habeas petition with the district court within the
ime permitted for filing a petition for review of the removal order in this
ourt, the district court's transfer of Batista's petition to us under § 1631 was
roper.

### B. *Genuine Issue of Material Fact*

### 1. *The basis for the determination*

As noted, Batista submitted to us two documents in support of his nationality
claim that were not part of the administrative record: Julio Batista's affidavit
and the "Divorce Sentence" document. In deciding whether we are authorized to
look outside the administrative record in our threshold task of identifying a
"genuine issue of material fact" as to Batista's citizenship claim, we start
with the text of the statute, which provides in relevant part:
(4) Scope and standard for review
**4** *Except as provided in paragraph 5(B)*--
(A) *the court of appeals shall decide the petition only on the administrative
record on which the order of removal is based,*
(B) the administrative findings of fact are conclusive unless any reasonable
adjudicator would be compelled to conclude to the contrary[.]

    * * *
(5) Treatment of nationality claims

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

(A) Court determination if no issue of fact
If the petitioner claims to be a national of the United States and *the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented,* the court shall decide the nationality claim.
(B) Transfer if issue of fact
If the petitioner claims to be a national of the United States and *the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented,* the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim....
 8 U.S.C. §§ 1252(b)(4) & (5)  (emphasis added).

Pursuant to this scheme, when an alien challenges an INS removal order on grounds other than a claim of citizenship, we are limited in our review to the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). However, when an alien claims citizenship in the petition for review, we are required to determine on the basis of the "pleadings and affidavits" whether there is a genuine issue of material fact sufficient to transfer the case to the district court for a new hearing and decision. *See* 8 U.S.C. § 1252(b)(5). [FN4] The statute does not limit that threshold inquiry to the administrative record.

This approach is not surprising, given the designed kinship between § 1252(b)(5) and Fed.R.Civ.P. 56, as noted by the Supreme Court in Agosto v. INS, 436 U.S. 748, 98 S.Ct. 2081, 56 L.Ed.2d 77 (1978). There, the Court reviewed a petitioner's claim of nationality under 8 U.S.C. § 1105a(a) (1976) (repealed 1996), which--like the current § 1432--required the court of appeals to determine from the pleadings and affidavits filed by the parties whether "a genuine issue of material fact about the petitioner's nationality is presented." Agosto, 436 U.S. at 751 (quoting 8 U.S.C. § 1005a(a)(5)(B)). The Court said that the statutory language was "virtually identical" to the language in Federal Rule of Civil Procedure 56, which governs motions for summary judgment, and concluded: "We may reasonably assume that, in using the language from Rule 56 as the standard for granting *de novo* district court hearings on citizenship claims, Congress intended the language to be interpreted similarly to that in Rule 56." Id. at 754. We also think it is reasonable to assume that Congress intended that this language, conspicuously different than the "only on the administrative record" language of § 1252(b)(4), embraces a familiar feature of summary judgment practice. In Rule 56 proceedings, parties can submit affidavits that are not based on an existing record for the purpose of demonstrating that a genuine issue of material fact exists requiring resolution by a fact-finder. *See, e.g, Judge Young on Crucial Elements of Pre-Trial Practice* at 179 (MCLE 2000) (advising parties moving for summary judgment to "assess whether third parties will voluntarily provide the affidavits necessary for a dispositive motion or, instead, whether a deposition or documents subpoena will be required"). *See also* Jack H. Friedenthal et al., *Civil Procedure* § 9.2 at 440 (2d ed.1993) (noting courts' preference for written affidavits in place of oral testimony for Rule 56 purposes).

[3] In reviewing the "pleadings and affidavits" for material facts in dispute sufficient to warrant an evidentiary hearing, we find ourselves in an unusual role, analogous to that of a trial court presented with a Rule 56 motion for

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

ummary judgment. The Supreme Court has stated that "a court of appeals cannot refuse to allow a *de novo* review of a citizenship claim if the evidence presented in support of the claim would be sufficient to entitle a litigant to trial were such evidence presented in opposition to a motion for summary judgment." Agosto, 436 U.S. at 756. Given this unusual function and the statutory language, we deem it appropriate under § 1252(b)(5) to look for a genuine issue of material fact as to citizenship in the "pleadings and affidavits" without regard to whether such materials are part of the administrative record.

*5 Case law supports this determination. In a case directly on point, Pignatello v. torney General of the United States, 350 F.2d 719, 723-24 (2d Cir.1965), the Second Circuit transferred the proceedings to the district court when evidence outside the administrative record presented a genuine issue of material fact as to petitioner's nationality claim. Specifically, the Second Circuit considered in its material-fact-issue inquiry 1) an affidavit submitted by petitioner from the leader of his military company, 2) an unexecuted naturalization application found in petitioner's army record, and 3) a certificate from an INS official attesting to the absence of any record of petitioner's naturalization--none of which were part of the administrative record. Id. at 724. *See also* Nguyen v. INS, 208 F.3d 528, 532 (5th Cir.2000), *aff'd* --- U.S. --- 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) (considering parentage court order arguably not part of administrative record to determine no fact issue existed regarding citizenship and noting that "the statute does not require that the BIA or immigration judge have heard this evidence").

"[T]he right in question--American citizenship--is one of the most precious imaginable." Alexander v. INS, 74 F.3d 367, 370 (1st Cir.1996). Recognizing this fact, Congress provided extra Article III procedural protections to safeguard the right to citizenship in removal proceedings by affording in § 1252(b)(5)(B) a hearing before the district court when a genuine issue of material fact exists as to citizenship. Therefore, we will consider whether the "Divorce Sentence" document [FN5] and Julio Batista's affidavit, together with the documents in the administrative record, present a genuine issue of material fact as to his nationality claim. [FN6]

[4] We add, however, an important caveat. Our decision to consider the documents at issue here does not mean that a respondent at a deportation proceeding involving a claim of citizenship has an automatic right to have new evidence considered on appeal, regardless of the reason for failure to proffer it earlier. The statute merely indicates that such evidence may be considered. It does nothing to alter the longstanding policy that reasonably available evidence should be submitted at the initial stage of any proceeding so that it can be tested in an evidentiary forum and unnecessary remands or references avoided. *See generally* INS v. Abudu, 485 U.S. 94, 106-08, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988).

We have no reason in this case to pursue any question of default because the government has not developed such an argument and we have no way of knowing when the evidence became available and whether it was submitted as promptly as possible. However, other petitioners would be well advised to present such evidence in the first instance in the administrative proceeding or, if they fail to do so, to explain in their submission containing new evidence at the court of appeals stage why such evidence was not originally produced.

Copr. © West 2001 No Claim to Orig. U.S. Govt Works

## 2. The documents

**\*6** [5][6] An alien may acquire citizenship by birth "only as provided by Acts of Congress." Miller v. Albright, 523 U.S. 420, 424, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998). Here, petitioner's nationality claim is based on 8 U.S.C. § 1432. [FN7] Cesar Batista can avail himself of derived citizenship under this statute by demonstrating 1) that Julio Batista became a naturalized United States citizen before his son Cesar Batista reached the age of eighteen; 2) that Cesar Batista resided in the United States pursuant to a lawful admission for permanent residence when his father was naturalized, or began to reside here permanently before reaching the age of eighteen; and 3) - the critical element for this petition--that Cesar Batista's parents legally separated and that Julio Batista was awarded legal custody of his son. See 8 U.S.C. 1432(a). Batista offered several pieces of evidence relevant to these issues: Julio Batista's 1982 naturalization certificate, Minerva Batista's declaration and 1997 naturalization application, the Batista parents' marriage certificate, and Cesar Batista's birth certificate. In addition, there are the two documents that were not part of the administrative record: Julio Batista's affidavit and the "Divorce Sentence" document.

The "Divorce Sentence" document, which is dated June 6, 1999, contains a declaration from a Dominican Republic government official that he has custody of a registered divorce document which states that Batista's parents divorced on November 14, 1988, and that custody of Batista was granted to his father. In his affidavit, Julio Batista states the following facts: 1) he came to the United States as a legal permanent resident on July 4, 1973 and married Minerva Batista on August 13, 1977 in the Dominican Republic; 2) after Cesar Batista was born in September 1977, the child and his mother lived in the Dominican Republic until December 1978; 3) at that time, Minerva Batista came to the United States as a permanent resident alien; 4) in June 1982, Julio Batista became a naturalized United States citizen; 5) in October 1983, his son, Cesar Batista, came to the United States; 6) Julio and Minerva Batista divorced on November 14, 1988, in the Dominican Republic, and the father was awarded sole legal custody of his son pursuant to the divorce decree; 7) after the divorce, Julio Batista married Joanny M. Brea, whom he divorced in May 1990; and 8) on July 6, 1990, he remarried Minerva Batista in New York City.

Setting aside for a moment the government's argument that the "Divorce Sentence" document has been improperly authenticated, we consider whether the evidence put forth by Batista presents a genuine issue of material fact about any of the elements needed to prove derived citizenship under § 1432. Julio Batista's naturalization certificate, dated June 16, 1982, indicates that he became a naturalized citizen before his son reached the age of eighteen. The government does not contend otherwise, nor does it dispute that Cesar Batista was admitted as a legal permanent resident at the age of six. The remaining question is whether the evidence submitted by petitioner--in particular, Julio Batista's affidavit and the Dominican "Divorce Sentence"--present a genuine issue of material fact as to whether Cesar Batista's parents legally separated and whether his father was awarded sole custody of him prior to Batista's eighteenth birthday.

**\*7** In *Agosto*, the petitioner's evidence of citizenship consisted of his own testimony and that of his adoptive parents and alleged half-brother. 436 U.S. at 758.

Copr. © West 2001 No Claim to Orig. U.S Govt. Works

The Court found that this evidence, taken as true, would refute the INS's documentary evidence weighing against citizenship, and that therefore "there [was] plainly a genuine issue of material fact for the District Court on the question of petitioner's citizenship." Id. at 761.

Applying *Agosto* 's standards here, we conclude that the evidence presented by Batista, taken as true, plainly raises a genuine issue of material fact about his nationality claim. The Divorce Sentence and Julio Batista's affidavit both state that Batista's parents were divorced on November 14, 1988, when Batista was eleven years old, and that his father was awarded legal custody of him.

The government seems to claim that the fact that Minerva Batista's 1997 naturalization application lists her marital status as "married" and names Julio Batista as her spouse is inconsistent with Batista's claim that his parents were legally separated or divorced in 1988. However, Julio Batista's affidavit states that he and Minerva Batista remarried on July 6, 1990, which could explain why she listed her marital status as "married" and named Julio Batista as her spouse in her 1997 naturalization application. In all events, whatever doubt Minerva Batista's naturalization application casts on Cesar Batista's claim, the petitioner's burden here is not to prove the facts conclusively, but merely to show that a genuine issue of material fact exists.

Therefore, without ruling on the authenticity of the document in question, we find that Batista's father's affidavit and the "Divorce Sentence" document present a genuine issue of material fact as to Batista's citizenship claim.

C. *Authentication*

The government argues that the "Divorce Sentence" document submitted by Batista is inadmissible because it was not properly authenticated, and hence his appeal should fail. Under the strictures of Rule 56, courts often refuse to consider for summary judgment purposes unauthenticated documents or other evidence inadmissible at trial. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2738 at 344 (3d ed.1998). We recognize, however, that the Rule 56 analogy is not a perfect one, given the limited factfinding capabilities of an appellate court. We note that the signatures and official seals on the back of the double-sided "Divorce Sentence" document submitted to us on appeal purportedly authenticate the document. All in all, we are in a poor position to decide such a claim.

By contrast, transfer of this issue to the district court will afford Batista a full opportunity to demonstrate the authenticity of the "Divorce Sentence" document, or alternatively, to show "good cause" why Fed.R.Civ.P. 44(a)(2) cannot be satisfied. [FN8] Furthermore, the government will be able to investigate properly the accuracy and authenticity of the "Divorce Sentence" document and introduce other evidence into the record for the district court's consideration. In light of the particular care with which citizenship claims are addressed, *see, e.g.,* 8 U.S.C. § 1252(b)(5), we believe it is important that the parties have a full opportunity to be heard on the authentication issue. Accordingly, under the unusual circumstances here, we deem it appropriate to leave the authentication determination to the district court. This is especially appropriate since Julio Batista's affidavit, in and of itself, raises the requisite issue of material

Copr © West 2001 No Claim to Orig U.S Govt Works

fact.

### III.

**\*8** For the reasons stated above, we transfer this proceeding to the district court for a hearing and decision on the nationality claim consistent with this opinion and pursuant to 8 U.S.C. § 1252(b)(5)(B).

*So ordered.*

> FN1. These provisions state in relevant part that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable," 8 U.S.C. § 1227(a)(2)(A)(iii)(1999), and that "[a]ny alien who at any time after admission has been convicted of a violation of ... any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is deportable." 8 U.S.C. § 1227(a)(2)(B)(i)(1999).

> FN2. The government indicted Batista on charges of illegal entry, but later dropped them.

> FN3. This provision states: "If the Attorney General finds that an alien has reentered the United States illegally after having been removed ... the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed ... and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5).

> FN4. While § 1252(b)(5)(A) explicitly refers to "pleadings and affidavits", § 1252(b)(5)(B) does not use that phrase. Nevertheless, common sense dictates that we read § 1252(b)(5)(A)'s "pleadings and affidavits" into § 1252(b)(5)(B) as an implied term.

> FN5. We treat the "Divorce Sentence" document as a purported "affidavit" from the Dominican Republic government official in custody of the actual divorce decree and therefore within the scope of § 1252(b)(5)'s "pleadings and affidavits."

> FN6. Pending before us is a motion by Batista to supplement his initial submissions to this court with 1) a double-sided copy of the Dominican "Divorce Sentence" document, and 2) another English translation of that document and its accompanying seals. The double-sided copy of the divorce document appears to contain various signatures and official seals on its back side which did not appear on the one-sided copy originally submitted as an addendum to Batista's brief. Batista's counsel explained at oral argument that he submitted the double-sided copy containing the official seals and signatures (with its accompanying translation) in response to the challenge made in the government's opposition brief to the authenticity of the document. We grant Batista's motion to supplement and note that any

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

reference in this opinion to the "Divorce Sentence" document shall refer to the double-sided copy and accompanying translations.


FN7.  Section 1432 was repealed effective February 27, 2001, by the Child Citizenship Act of 2000, Pub.L. No. 106-395, 114 Stat. 1631 (2000). However, the repeal does not affect the issue before this court, namely, whether Batista automatically acquired citizenship under § 1432 before reaching the age of 18 (which occurred in 1995, well before the enactment of the Child Citizenship Act).


FN8.  We have stated that Rule 44(a)(2) provides an "appropriate vehicle" for putting foreign official documents in civil proceedings before Article III courts. United States v. Rodriguez Serrate, 534 F.2d 7, 9- 10 (1st Cir.1976). This rule permits "a court for 'good cause shown' to admit attested copies without final certification in recognition of the fact that 'in some situations it may be difficult ... to satisfy the basic requirements of the rule....' " Id. at 10 (quoting Advisory Committee's Note to Rule 44).

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

U.S. COURT OF APPEALS
FILED
NOV 5   2001

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

CHARLES R. FULBRUGE III
CLERK

ENRIQUE GALAN,                     )
                                   )
v.                                 )          No. 01-60461
                                   )
JOHN ASHCROFT, UNITED STATES       )
     ATTORNEY GENERAL.             )
_____)

**PETITIONER'S 28(j) LETTER ADVISING THE COURT OF CASE EXACTLY
ON POINT FROM THE FIRST CIRCUIT**

Petitioner hereby advises the Court that on October 29, 2001, the
First Circuit issued a decision which is exactly on point with
respect to his pending motion to transfer the instant case,
pursuant to 8 U.S.C. §1252(b)(5), to the United States District
Court for the Southern District of Texas, Brownsville Division, for
a *de novo* determination of his claim to United States citizenship.

In *Batista v. Ashcroft*, __ F.3d __, (1st Cir. 2001), 2001 WL 1285228
(copy attached), the Court held that the restrictions on the
court's authority to review a reinstated removal order based on an
aggravated felony do not apply when the petitioner makes a claim of
United States citizenship. The Court also held that it was
appropriate to examine documents outside the administrative record
to determine whether the claim was sufficient to warrant transfer
to District Court for an evidentiary hearing.

Respectfully Submitted,

Lisa S. Brodyaga
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with attachment, was sent by Airborne Express to Heather Phillips, Attorney, 1331 Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 2, 2001.